## THE STATE v. HARRY J. COHEN, Appellant.

**Division Two, January 6, 1914.**

1. **RECEIVING STOLEN PROPERTY: Accomplice.** One who hires his express wagon to two others and follows along on foot while they steal certain goods and deliver them to the defendant, is not an accomplice of defendant in the crime of knowingly receiving the stolen goods.

2. ————: ————: **Co-Operation.** Evidence that another, and not the defendant, received stolen goods, does not tend to show that that other was an accomplice of defendant on trial for knowingly receiving the stolen goods.. It wholly fails to show that the other co-operated, as an accomplice must do, with the defendant in committing the crime charged.

3. ————: **Fraudulent Intent.** Fraudulent intent is not a necessary element of the crime of knowingly receiving stolen property as defined by Sec. 4554, R. S. 1909.

4. ————: **Instructions: Consistent with Defendant's Evidence.** Where defendant in a prosecution for receiving stolen goods denies that he ever had possession of the goods for any purpose, he is not entitled to an instruction that if he received the goods intending to return them to their owner he should be acquitted.

5. ————: **Statements of Accused: Instructions.** Where there is evidence in a criminal trial that the defendant had made statements out of court that might have a bearing on his guilt, and he denied those statements when on the stand, a proper instruction is rightly given which declares the law as to how the jury should consider any statements they should find defendant had made in relation to the crime charged.

6. ———: Appeal: Cross-Examination of State's Witness. A defendant cannot complain of testimony brought out by him in cross-examining a witness for the State.

7. ———: ———: Redirect Examination of State's Witness. A defendant cannot complain because the court overruled his objection to an answer of a State's witness on redirect examination, when the answer disclosed nothing different from the inference which the jury could easily have drawn from facts elicited by defendant from the same witness on cross-examination.

8. ———: Evidence: Other Offenses. In a prosecution for receiving stolen goods evidence that defendant had often received stolen goods from the same man and paid a low price for them, is admissible, without any showing of *scienter* on those occasions, to prove guilty knowledge.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

Affirmed.

*Boogher & White* and *Barclay, Fauntleroy, Cullen & Orthwein* for appellant.

(1) The court erred in refusing to give an instruction as to the testimony of an accomplice. The word "accomplice" means simply a participator in crime, and at common law it included all the *particeps criminis*, whether principals in the first or second degree, or accessories. Russ. Crimes (9 Ed.), 49; 4 Blk. Com. 27; Johnson v. State, 2 Ind. 652; Hudspeth v. State, 50 Ark. 534; Cross v. People, 47 Ill. 152, 95 Am. Dec. 474; State v. Roberts, 15 Ore. 187; Words and Phrases, title "Accomplice." Schilling v. State, 106 S. W. (Tex. Cr. App.) 357; State v. Kellar, 73 Am. St. 777; Johnson v. State, 125 S. W. (Tex. Cr. App.) 18; People v. Holden, 111 N. Y. Supp. 1019. If the facts are not in dispute, whether or not a witness is an accomplice is a question for the court; but if the evidence is conflicting, the issue should be submitted to the jury with proper instructions. People v. Kraker, 72 Cal. 459, 1 Am. St. 65; State v. Schlagel, 19 Iowa,

169; State v. Carr, 28 Ore. 389; Williams v. State, 33 Tex. Cr. 128, 47 Am. St. 21. The jury must be reasonably convinced that a witness is an accomplice before the rules of accomplice testimony become applicable. Ross v. State, 74 Ala. 532; Childress v. State, 86 Ala. 77. If his testimony raises a strong presumption that he is an accomplice, this has been held sufficient. Pool v. State, 25· Tex. App. 661. The jury may consider a witness an accomplice without proof beyond a reasonable doubt. Commonwealth v. Ford, 111 Mass. 394. (2) The court committed palpable error in giving instructions for the State, in that it failed to submit to the jury the question of whether the defendant, if he received the property, did so with a fraudulent intent. This is the very gravamen of the offense. State v. Sweeten, 75 Mo. App. 128; State v. Moore, 101 Mo. 320; State v. Campbell, 108 Mo. 611; State v. Warren, 109 Mo. 432; State v. Gibson, 111 Mo. 102; People v. Walker, 198 N. Y. 329; Jester v. Lipman, Wolfe & Co., 67 Pac. 103; Arcia v. State, 26 Tex. App. 193; Darrah v. State, 90 N. W. 1124; Goldsberry v. State, 92 N. W. 912; Pickering v. United States, 101 Pac. 123; Rapalje on Larceny and Kindred Offenses, secs. 311, 325; People v. Johnson, 1 Parker's C. C. 564; People v. Avila, 43 Cal. 196; State v. Caveness, 78 N. C. 484; State v. St. Clair, 17 Iowa, 149; Hurrell v. State, 5 Humph. 68; Nourse v. State, 2 Tex. App. 304; Aldrich v. People, 101 Ill. 16; Com. v. Leonard, 140 Mass. 473; Com. v. Bean, 117 Mass. 141; State v. Rushing, 69 N. C. 29; Robinson v. State, 84 Ind. 452; Thomp. on Trials, sec. 2154. (3) Instruction 6 given by the court on the subject of statements made by defendant is erroneous because not supported by any testimony. However proper an instruction may be as an abstract proposition of law, it is error to give it when the facts in evidence do not justify it. State v. Elsey, 201 Mo. 561; State v. Gordon, 191 Mo. 114; Jordan v. Transit Co., 202 Mo. 418; State v. Campbell, 210 Mo. 109. The

giving of instruction 6 was erroneous for the further reason that the defendant as a witness made the same statements on the stand that he made before his arrest, his defense was bottomed on the truth of these statements and the practical effect of the instruction was to discredit the testimony of the defendant as a witness in the case and advise them that the law presumed all statements favorable to defendant made by him, either in or out of court, are presumed to be untrue and was an unwarranted comment on the evidence and calculated to mislead the jury. State v. Salmon, 216 Mo. 466; State v. Shelton, 223 Mo. 118; State v. Hall, 228 Mo. 456; State v. Cannon, 232 Mo. 205. Instruction 4 is erroneous because it allows the jury to consider evidence of the receipt of other stolen goods by defendant without requiring that body to find the defendant knew they were stolen. State v. Speritus, 191 Mo. 37. (4) The court erred in admitting testimony concerning previous and subsequent transactions. Whatever the rule may be in regard to admission of similar transactions, our insistence is that the court committed error in allowing the State to go to the extremes it went in offering testimony and in attempting to offer testimony in regard to previous and subsequent offenses. The issue presented by the indictment was obscured and lost sight of by the persistent and continued effort of the State to introduce evidence of similar offenses. State v. Speritus, 191 Mo. 37; Woodward v. State, 104 S. W. 1110. If the instruction heretofore complained of as omitting to require the jury to find that defendant received the goods with unlawful or criminal intent states the law correctly, then it follows necessarily that intent is immaterial in a prosecution under this statute, and wherever intent is immaterial, evidence of similar offenses is inadmissible. People v. Hopson, 1 Denio, 574; People v. O'Brien, 96 Cal. 171; Chipman v. People, 24 Colo. 520; Albrecht v. State, 6 Wis. 74. It is only

in cases where the defendant admits the possession and claims that it was an innocent possession that testimony of distinct offenses is admissible. When the defendant raises the question as to whether he intended to commit the crime by attempting to show that he committed the act innocently and for an honest and lawful purpose, such testimony may be admitted. In the case at bar the defendant denies that he committed the act at all and the state of the case made by the prosecution tenders no issue of honest or dishonest intent. State v. Burlingame, 146 Mo. 207; Regina v. McDonnell, 5 Cox's C. C. 153; Jackson v. People, 18 Ill. App. 508; People v. Lonsdale, 122 Mich. 388; Clark v. Commonwealth, 26 Ky. L. R. 1029. (5) The court erred in admitting testimony as to five hundred transactions, which were not similar to the transaction charged in the indictment, and was remote in point of time. (6) The court erred in allowing testimony of subsequent offenses to be proved in rebuttal. .

*John T. Barker,* Attorney-General, and *Thomas J. Higgs,* Assistant Attorney-General, for the State.

(1) It has been held that the "receiver of stolen property" was not the accomplice of the "thieves" because the crime of each is separate and distinct. The same reasoning would not permit, in law, an accessory to a theft, such as the defendant, Miller, to be an accomplice of one charged with receiving stolen property. In other words, the reverse proposition must be ture. 1 Wharton, Crim. Ev. (10 Ed.), sec. 440; State v. Kuhlman, 152 Mo. 103; State v. Shapiro, 216 Mo. 371; State v. Richardson, 248 Mo. 569. (2) A receiving of the goods with fraudulent intent is not necessary to the commission of the crime of "receiving stolen property." The gravamen of the offense is "guilty knowledge" and all that is necessary is that the language of the statute be followed to have the information or indictment proper in form and sub-

stance under the decisions of this court. In this respect the offense of "receiving stolen property" differs from the offense of larceny. R. S. 1909, sec. 4454; Kelley's Crim. Law & Procedure (3 Ed.), sec. 683; State v. Guild, 149 Mo. 370; State v. Speritus, 191 Mo. 37; State v. Mayer, 209 Mo. 391. "The intent" with which the goods are received is not an element of the offense and a refusal to instruct as to the same is not error. 1 Wharton, Crim. Law (10 Ed.), sec. .988; State v. Sakowski, 191 Mo. 81; State v. Rich, 245 Mo. 167; State v. Smith, 157 S. W. 323. (3) The court did not instruct the jury as to a confession of the defendant nor was there any confession in this case. The court did instruct, in instruction 6, as to the statements made by the defendant in relation to the crime charged, after the commission of the alleged offense. The record is full of statements made by the appellant Cohen which warranted the instruction being given by the court. (4) Instruction 4 as given by the court was proper. In State v. Meyers, 82 Mo. 558, Judge PHILIPS, after an exhaustive review of both the English and American authorities, quoted from Bottomley v. U. S. in announcing the principle of evidence which justifies the exceptions to the rule which does not permit evidence of other transactions, as follows: "In all cases where the guilt of the party depends upon the intent, purpose or design with which the act is done or upon his guilty knowledge thereof, I understand it to be the rule that collateral facts may be examined into in which he bore a part for the purpose of establishing such guilty intent, design, purpose or knowledge." People v. Molineaux, 168 N. Y. 293. One of the essential ingredients of this offense with which the appellant is charged is guilty knowledge, and furthermore, the evidence tended to show a common plan or scheme embracing the various receipts of stolen property. There is no doubt of the probative value of the several different transactions of handling stolen property by the appellant

in showing the guilty knowledge with which he received the property and the intention for which said property was received. State v. Wilson, 143 Mo. 346; State v. Hodges, 144 Mo. 53; State v. Phillips, 160 Mo. 506; State v. Spray, 174 Mo. 582; State v. Hyde, 234 Mo. 225. (5) The testimony as to the five hundred transactions wherein Lineman and Meyers had stolen goods and used Miller's wagon, was brought out in answer to questions propounded by the appellant's counsel to the State's witness, Miller, on cross-examination.

WILLIAMS, C.—The indictment charged defendant with knowingly receiving stolen property of the value of seven hundred and thirty-five dollars. Trial was had in the circuit court of the city of St. Louis,

Receiving Stolen Property.

Missouri, resulting in defendant's conviction and his punishment being assessed at two years in the penitentiary. The stolen property, so received, consisted of eight bolts of blue serge cloth and one bolt of brown serge cloth, totalling seven hundred and thirty-five yards. The evidence on the part of the State tends to show the following facts: Defendant was in the wholesale liquor business, in the city of St. Louis, occupying a store room about twenty-five by seventy-five feet. Ernest Miller, one of the principal witnesses for the State, testified that, on the morning of June 14, 1911, Fred Lineman and George Meyers hired his express wagon and drove it down the street, following a delivery wagon of the Manhattan Cloth Sponging & Water Proofing Company, until the latter wagon stopped near the corner of Eighth street and Washington avenue, St. Louis, Missouri. At this point, the driver of the Manhattan wagon having gone into an adjoining building, Lineman got into the Manhattan wagon and drove away—witness's wagon, in charge of Meyers, following. The two wagons were driven some distance

along the street and into an alley. The wagons proceeded up the alley, stopping at the vacant building in the rear of defendant's place of business. Here Lineman and Meyers took the serge cloth from the Manhattan wagon and placed the cloth in the vacant building. Miller, who had followed along on the sidewalk and up to this place, took his wagon home. Defendant was not present at the vacant building. Defendant's place of business was on the front part of the lot and was separated from the vacant building on the rear of the same lot by means of a high fence and locked gate. That same evening, about 5:30, Miller went to defendant's place of business and saw defendant carrying the serge cloth into the back room of his wholesale liquor store and defendant and another man were engaged in unrolling a bolt of cloth and Miller there asked the defendant who was going to pay him the three dollars for the use of his wagon in hauling the goods and defendant replied, "Get away from here; the police are around here,"—defendant telling the witness he would see him "tomorrow at Ninth and Locust at one o'clock," but that defendant never paid him the three dollars. As witness was leaving defendant's place of business he saw Lineman and Meyers go into the same. Witness further testified that after defendant was arrested defendant requested him to leave town and not appear against him, promising to pay him money and his expenses, and he also wanted the witness to testify that a man by the name of Seltzer, and not himself, received the goods. Witness refused to leave town and later defendant asked him to be as lenient as possible and deny knowing him. On another occasion, on June 2, witness saw Lineman taking cases of stolen dry goods, ladies' underwear, into defendant's place of business and on the day before the serge cloth was stolen he saw Lineman deliver fourteen cases of stolen shoes (one hundred and sixty-eight pairs) to defendant and defendant paid Lineman one hundred

and forty-seven dollars. for same.    The shoes were stolen from the outbound platform of the Louisville & Nashville Railroad Company.    Defendant told Lineman whatever he got the next day "to put them in back there," that he (defendant) would be in Granite City all afternoon and would return about four o'clock.    At another time, during the month of May, Lineman brought the defendant ten thousand Preferencia cigars which were stolen from the platform of the Wabash Railroad Company.    Defendant bought the cigars from Lineman paying him one and one-half cents apiece for them.    On May 15th, Lineman delivered three barrels of stolen whisky to defendant.    The whisky was stolen from the Frisco freight depot.    This witness also testified that defendant told Lineman to go out and get him a good lot of "merchandise, shoes, whisky, anything;" and that if they could get goods from the Manhattan wagon he would buy them.    This was two or three days before the goods were taken from the Manhattan wagon.    On *cross-examination,* this witness testified that he had hauled stolen goods for Lineman and Meyers about five hundred times and that defendant was the "paymaster."    And that on the morning of June 13, 1911, witness, Lineman and Meyers were in defendant's office and defendant pulled a "roll" of money out of his pocket and said: "Get busy boys, I have a lot of money today. If you get any stuff and I am not here put it in the back room and I will be back at five o'clock in the evening."    The witness admitted that he was a witness in the trial of Lineman and that at that trial he testified that he did not see where they delivered the serge cloth on the 14th day of June.    On redirect examination, the witness further testified that Cohen had bought the goods which were stolen on the five hundred occasions and had shipped them away. This witness testified that he was arrested in connection with the stealing of the cloth and that he turned "State's evidence" and the case against him was

"*nolle prossed.*" Armen Traxler, president of the Big Four Transfer Company, testified that the president of the Manhattan Company asked him to aid in finding the stolen goods. The witness then called upon defendant and told defendant that he "probably knew who had the goods" and asked defendant to aid him in helping recover them. Defendant promised to do all he could to help recover the goods and later defendant told Traxler that he had seen the parties that had the goods and that they would return the goods upon payment of the money which they had paid for the goods plus one hundred dollars. Traxler had several interviews with defendant and later went out to defendant's house where he had a talk with defendant and defendant's wife and left about three hundred dollars in currency on a table at defendant's house with the understanding that defendant was to use the money in paying the man who had the goods. Defendant said that he would try to get the goods back and said that the party who had the goods had told him that they were in Chicago and that they were afraid to ship them back at that time. Later defendant told the witness that Seltzer was the party that had received the goods and that they were in the charge of a Mr. Rosenthal in Chicago. Some days elapsed and the goods were not returned and the witness saw defendant and told him that the man whose goods had been stolen demanded that his goods or the money which the witness had turned over to defendant be returned. The next day defendant's wife returned the money to Traxler— Traxler promising to repay the money if the goods were later delivered. A few days later, witness was called by telephone and a lady's voice said: "If you go to 2815 Gamble, you will find four cases there." The witness did not know whose voice it was, but, upon going to the place directed by the telephone message, found the serge cloth which had been stolen. The goods were located in a shed in the rear of vacant residence

premises. The cloth was then returned to the Manhattan Company, where it was identified as the cloth which had been taken from the wagon on June 14, 1911. The goods when recovered were about seventy-five yards short. A day or two later, witness Traxler paid to defendant the amount of money which he had first left with defendant less seventy-five dollars which he kept out for the shortage. Defendant objected to witness keeping out seventy-five dollars. When the witness paid defendant, he first offered defendant a check but defendant said he wanted the currency. Defendant's wife told Traxler that a Mr. Seltzer had bought the goods from the thieves. Frank McKenna, a police officer of the city of St. Louis, testified that about noon on June 15, 1911, he searched defendant's place of business and also the vacant building on the alley, but failed to find the goods and defendant denied knowing about them. Later witness told defendant he was going to make him all the trouble he could in recovering the goods. This witness caused Traxler to offer Cohen the money to have the goods returned. The testimony on the part of the defendant tended to show the following facts: Five witnesses testified that defendant's reputation for honesty and fair dealing was good but on cross-examination it was shown that their knowledge was limited to business transactions which they had with him and the fact that the bills which he incurred in his wholesale liquor business were promptly paid. The witnesses admitted that they did not know any of defendant's neighbors with whom defendant associated or any of the people who were in business close to the defendant. Sarah Abramson testified that she was the bookkeeper for the defendant's wholesale liquor business and that defendant had nothing to do with the vacant building on the alley, in the rear of his place of business. That on June 14, 1911, defendant left the city about ten a. m., returning about five p. m.; that during the day, defendant was delivering goods

and taking orders in Granite City and other small towns; that she remained in the store after defendant returned until about 6:30 p. m., and that Ernest Miller never came to the store on that evening and that defendant was not in the back of the store unrolling goods on that evening; that she never saw Miller in defendant's place of business until after defendant was indicted, after which time witness Miller came to defendant's place of business and offered to leave town if defendant would pay him money; that she never saw Lineman or Meyers in defendant's store; that one evening Miller's mother came to defendant's store while defendant was out and she told the witness that she had heard some persons trying to get her son to "put up a job" on defendant, concerning these goods, because defendant had money and would help the other parties out of their trouble. Lulu Cohen, wife of the defendant, testified that Traxler left two hundred and sixty-five dollars at defendant's home, the money to be used for the purpose of recovering these stolen goods. Mrs. Cohen gave the money to Seltzer and Seltzer promised Mrs. Cohen that he would return the goods to Mr. Traxler. Seltzer delayed in returning the goods and Traxler demanded the return of the money and Mrs. Cohen repaid Traxler. Mrs. Cohen testified that she never went to Seltzer to get the money back when Traxler made demand for same, but that she borrowed the money, personally, and paid it back to Traxler. She could not remember from whom she borrowed the money. After Traxler had recovered the goods he paid Mrs. Cohen one hundred and eighty-five dollars, which was the amount he had originally given her less the sum of eighty dollars kept out for the shortgage in the goods. Harry J. Cohen, defendant, testified, in his own behalf, that on June 14, 1911, he left the store at nine o'clock a. m., and went to Granite City, Madison and Brookline for the purpose of taking orders and delivering some goods and returned to his store about

five p. m., where he remained until 6:15 p. m., and that Ernest Miller was not in his store that evening. Defendant denied ever having received any stolen goods from Lineman, Miller or Meyers or anybody else and denied telling Lineman two or three days before that he would take any stolen goods that they would "put in" and that he had no control over, or possession of, the vacant building facing on the alley, in the rear. of his place of business, and that it was no part of the premises that he rented. Witness further testified that he had known Traxler about ten years and that Traxler came to him asking, as a favor, that he help recover the stolen goods. That it was reported that a man by the name of Seltzer was handling stolen goods and Traxler asked defendant to see Seltzer about returning the cloth. Defendant saw Seltzer and Seltzer offered to return the goods upon payment of $265, and upon the further understanding that Seltzer's name would not be mentioned. Defendant communicated this fact to Traxler and Traxler left the $265 at defendant's home. Defendant claimed that he did not handle the money but that his wife took the money to Seltzer. Defendant had several communications with Seltzer urging him to return the goods or the money and Seltzer promised to have the goods returned in a few days. Defendant admitted that thirty-seven cases of cigars were taken out of his store by a policeman and that the policeman claimed that the cigars were stolen from the M., K. & T. R. R. Co., and defendant told the policeman that if they were stolen goods he did not want them. Defendant claimed that he had bought the cigars from a saloon keeper but did not remember the name or the amount paid, but that he never got any money back for the cigars. Defendant testified that Lineman or Meyers were never in his place of business and that Miller was never in his place of business until after defendant was arrested. Defendant denied giv-

ing Miller any money or checks and further denied that he gave Miller's wife any dress goods. Henry Seltzer testified for the State in rebuttal to the effect that neither defendant nor his wife ever gave him any money and that he never had possession of the stolen goods in question. Mrs. Ernest Miller, wife of Ernest Miller, testified that on Easter Sunday, 1911, defendant gave her ten yards of dotted swiss cloth, taking it from a closet in the rear of defendant's store, and that she saw other cloth and goods packed and stored in defendant's back closet. That she had seen Lineman in Cohen's place of business before June 14, 1911. Frank McKenna, police officer, testified that defendant's general reputation for honesty was bad, prior to June 14, 1911, and that prior to that date he had seen defendant with Lineman and Miller and Meyers on different occasions; that he had seen them go into defendant's place of business and had seen them talking with defendant on the street at different times. Defendant told the witness that he paid fifty dollars for the ten thousand Preferencia cigars. Ernest Miller further testified that he met the defendant almost daily during the four months prior to June 14, 1911. Armen Traxler further testified that, at about the time he was negotiating with defendant for the return of the goods, he saw Lineman, Meyers and the defendant together talking on the street.

I. Appellant contends that witnesses Miller and Seltzer were accomplices of defendant and that the court erred in failing to instruct the jury that their testimony should be received with caution.

Accomplices.

"An accomplice is a person who knowingly, voluntarily and with common intent with the principal offender unites in the commission of the crime. . . . The principal and the accomplice must co-operate in the commission of the same crime." [1 Wharton's

Criminal Evidence (10 Ed.), sec. 440; State v. Richardson, 248 Mo. 563.]

In the case of State v. Kuhlman, 152 Mo. 100, l. c. 103, the court said:

"One bearing the relation of an accomplice as defined by Dr. Wharton and approved by this court is a principal in the first degree and is liable to be charged and punished in the same manner as the principal."

In that case it was held that the thief was not an accomplice of the person who knowingly received the stolen goods. To the same effect is State v. Shapiro, 216 Mo. 359, l. c. 371. Applying the above test, witness Miller was not an accomplice of the defendant.

With reference to witness Seltzer, appellant, in his brief, says: "Seltzer, according to the testimony produced by the defendant *was the person who received the goods* and at the request of the defendant clandestinely returned them. . . . Miller says he saw Seltzer point the thieves where to take the goods." But this evidence is not sufficient to show that Seltzer was an accomplice of Cohen's. It only tends to prove that Seltzer and not Cohen received the stolen goods and wholly fails to show that Seltzer and Cohen "cooperated in committing the crime," as the above announced rule requires.

II. It is contended that the court erred in failing to submit to the jury the question of whether the defendant, if he received the property, did so with a fraudulent intent.

**Instructions: Fraudulent Intent.**

Whatever may be the rule in other jurisdictions, controlled or influenced by statutes, in many instances unlike the Missouri statute, it is sufficient to say, concerning the above point, that the rule has become well established in this State that a fraudulent intent is not

a necessary element of the crime under section 4554, Revised Statutes 1909, but that the gravamen of the crime is the receiving of stolen goods, etc., knowing the same to have been stolen, etc. [State v. Rich, 245 Mo. 162; State v. Smith, 250 Mo. 350; State v. Sakowski, 191 Mo. 635; State v. Richmond, 186 Mo. 71.]

Appellant's brief states: "This instruction ignored the intent of the defendant entirely, and if he received the goods intending to restore them to the rightful owner as he testified, he was, under said instruction, nevertheless, guilty." Replying to that contention, let it be said that we do not here undertake to say that, where the evidence tends to show that the possession was taken in good faith for the purpose of restoring same to the rightful owner, the defendant, if he so requested, would not be entitled to have the jury, in effect, instructed that if such was his purpose at the time he received the property he should be acquitted. But that question must be left for determination when the facts justify the raising of such an issue. No such defense is interposed here. The evidence on the part of the defendant denies that he ever had possession of the goods in question for any purpose.

III. Instruction 6 properly declared the law as to how the jury should consider any statement or statements, in relation to the crime charged, which the jury should find from the evidence had been made by the defendant. Appellant does not criticise the form of the instruction but contends that it should not have been given because there was no evidence upon which to support it and further that the defendant upon the stand made the same statements as he did off the stand. A review of the evidence discloses that there was evidence to the effect that defendant, on the evening of the theft, in

**Statements of Accused.**

State v. Cohen.

reply to witness Miller's demand for money said, "Get away from here; the police are around here;" and further that defendant offered to pay witness to leave and not appear against him and requested the witness to deny that witness knew the defendant. All of these statements were denied by defendant upon the stand and therefore appellant is in error as to both of said contentions.

IV. It is further contended that "the court erred in admitting testimony as to five hundred transactions, which were not similar to the transaction charged in the indictment and were remote in point of time."

**Cross-examination of State's Witness.**

Appellant is not in a position to complain of the above evidence. The testimony concerning the five hundred transactions was first brought out by appellant's cross-examination of the State's witness Miller as shown by the following excerpts from the testimony.

"Q. Will you tell me how many times you have committed larceny? how many times you have stolen? A. With Lineman?

"Q. Yes, with Lineman first, how many times have you and Lineman stolen anything? A. I never stole, Lineman always did the stealing.

"Q. Lineman did the stealing and you did the hauling? A. Yes, sir.

"Q. How many times did Lineman do the stealing and you do the hauling? A. About 500 times in three years.

"Q. You have hauled stolen goods 500 times with Lineman in three years? A. Yes, sir.

"Q. You knew they were stolen? A. Yes, sir.

"Q. And that was your occupation? A. No, sir.

"Q. You didn't do much if you hauled 500 lots of stolen goods with one man; did you have another thief? A. Lineman and Meyers.

State v. Cohen.

"Q. You hauled what Lineman stole 500 times and you hauled how many times what Meyers stole? A. Meyers and Lineman together.

"Q. Five hundred for both of them? A. For both, 250 for each.

"Q. You have been at the business five years? A. Three years.

"Q. You think you have pulled off, assisted in pulling off 500 jobs in three years? A. These men did that in their line of business.

"Q. Easy that amount? A. Yes, sir.

. . . . . . . . . .

"Q. You knew they were going to steal these goods and you were renting your wagon to them so they might get away with the stolen goods? A. Yes, sir.

"Q. You were doing that for the sum of three dollars? A. I would lend them my wagon for whatever they would pay me.

"Q. They were the paymasters? A. Mr. Cohen was the paymaster.

. . . . . . . . . .

"Q. According to your testimony they had been putting shoes and merchandise into the place for three years, how did he come to tell them to do it that day when they had been doing it for three years? A. He had been receiving property there in the back and he says, 'If I am not here leave it in the back room.'

"Q. Hadn't they always been doing it if he was not there? A. It was a password to say that.

. . . . . . . . . .

"Q. You were hauling goods up there? A. Yes, sir.

"Q. How many of the five hundred loads did you haul up there; I want it all, I don't want to have to examine you again? A. I could not say."

State v. Cohen.

After going into the subject on cross-examination the State's attorney in his redirect examination asked the witness the following question:

"What became of the goods that were stolen during those five hundred different occasions that you have mentioned in answer to Mr. Cullen's question? A. Mr. Cohen would buy them and ship them away."

Appellant's counsel interposed an objection which the court overruled on the ground that the cross-examination had gone into the matter. This action of the trial court did not constitute error. The answer made to the above question asked on redirect examination disclosed nothing different from the inference which the jury could easily have drawn from the facts brought out by said cross-examination.

V.   It is urged that the court erred (1) in admitting testimony of other specific acts of receiving stolen property and (2) that even if other similar transactions were admissible the court refused **Other Offenses: Showing Guilty Knowledge.** to instruct the jury, as requested by the defendant, that before they could consider the evidence for any purpose they must find that at the time defendant received the goods on each of the other occasions he did so knowing the same to have been stolen.

The evidence to which reference is here made is the evidence tending to show that defendant had received from the same man, Lineman, other stolen property, to-wit, whisky, dry goods, shoes and cigars under similar conditions, paying a low price for same. Evidence of this character is admissible upon a charge of this kind. [State v. Smith, 250 Mo. 350, 1. c. 368, and cases therein cited.]

Neither do we think it necessary that the jury should have been required to find that at the time the defendant received the goods on each of the other occasions he knew the same had been stolen. This

for the reason that the evidence of other similar transactions, such as disclosed by the evidence in this case, would be admissible in a case of this kind, even though the proof fails to show that upon each of the respective occasions of receiving stolen property he received the same knowing that it had been stolen. When the evidence does show that additional fact, it no doubt would possess greater probative weight, but the evidence is not to be excluded for the reason that it fails to go thus far. [State v. Jacob, 30 S. C. 131; State v. Murphy, 84 N. C. 742; Devoto v. Commonwealth, 60 Ky. (3 Metcalfe) 417.]

While it may be said that evidence of a single transaction of defendant's having received stolen goods would not be evidence that he received those particular goods knowing them to have been stolen, yet, when the instances, similar in character as to person from whom received, low price paid, etc., are multiplied, the combined testimony would no doubt be some evidence (at least circumstances from which it might be inferred) that the person received each delivery with guilty knowledge, and more especially so with reference to the later instances in a series of receiving stolen property. A person might innocently receive stolen property on one occasion, yet such instances, so similar in character, could not be multiplied to any great extent and the receiver's mind be left free from all trace of suspicion which would most likely develop into a matured guilty knowledge. Therefore, such evidence is admissible and possesses probative value in that it throws reliable light upon the kind of knowledge the defendant may have had in receiving the goods in the instant case, the weight of such evidence to be measured by the jury after an instruction given limiting the consideration thereof to the purpose of arriving at the guilty knowledge or *scienter*, if any, as was done in the present case. In discussing the admissibility of evidence of similar transactions without fur-

ther showing· that the defendant received the same knowing them to have been stolen, Wigmore on Evidence states the rule as follows:

"*The mere fact of possession* would seem to be sufficient as probably leading to a warning through the reclamation of the goods; and it is not necessary additionally to show that the receipt was accompanied by circumstances calculated in themselves to excite suspicion, or that the possession was so concealed as to show guilty knowledge. The latter features, however, are present in some of the precedents, though they do not seem to be treated as a requirement for every instance. There are therefore three possible attitudes to take as to this element: The mere fact of possession suffices; or the possession must have been obtained under suspicious circumstances; or neither of these suffices, and former *knowing·* possession is alone sufficient. The first view (i. e., mere fact of possession suffices) is that represented in most courts in this country; the second is sometimes hinted at; the third is represented by R. v. Oddy in England. . . . From the point of view, then, of the knowledge principle, it is necessary and sufficient to show (a) former receipt and possession (and, perhaps, under suspicious circumstances), (b) of goods similar as to the person bringing them, or as to their kind or otherwise." [1 Wigmore on Evidence, sec. 324.]

It therefore follows that the court did not err in refusing to instruct on the point mentioned.

VI. Other assignments of error made were; that the conduct of the prosecuting attorney was improper; that the cross-examination of defendant was broader than the examination in chief and that certain evidence was admitted in the State's rebuttal that should have been admitted in chief, and that certain evidence was improperly admitted. In support of these various other assignments of error, appellant has copied

into his brief forty pages of the evidence in which it is claimed the alleged errors occur. It would serve no useful purpose to set forth the same here. It is sufficient to say that we have carefully gone over the same and are unable to find any error therein which would justify a reversal of the case. The case seems to have been vigorously prosecuted and vigorously and ably defended; but throughout the case the learned trial court, acting within the exercise of a proper discretion, kept the progress of the trial within proper bounds and no rights of defendant were jeopardized or prejudiced.

The judgment is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. All the judges concur.