**STATE of Missouri, Respondent,**

v.

**Millard Earl CROCKER, Appellant.**

No. 44631.

Supreme Court of Missouri.

Division No. 1.

Feb. 14, 1955.

Robert A. McIlrath, Flat River, for appellant.

John M. Dalton, Atty. Gen., Richard R. Nacy, Jr., Sp. Asst. Atty. Gen., for respondent.

HYDE, Judge.

Defendant appeals from conviction of arson, under Section 560.020 (statutory references are to RSMo and V.A.M.S.) for which he was sentenced to two years in the penitentiary. It is not claimed that the State failed to make a case for the jury; the allegations of error are that defendant and witnesses were improperly questioned about collateral matters and that the Court made improper statements to the jury.

The State's evidence was that defendant (then in the United States Navy but home on leave) and Joe Jackson (a married man with a family) took Juanita Boomershine and Louise Sellers to the White Schoolhouse in Iron County in a black DeSoto car belonging to defendant's father. They drank beer and wine and twice during the evening drove to a tavern, once to replenish their supply of beer, and then came back to the schoolhouse. Juanita and Louise both

testified that defendant and Jackson dared each other to set the school woodshed on fire; that they both got out of the car, went over to the woodshed and set it on fire; that, after the woodshed burned, defendant and Jackson dared each other to set the schoolhouse on fire, and that they did set the schoolhouse on fire by carrying embers from the woodshed to it. Defendant and Jackson denied burning the schoolhouse. Jackson had testimony by himself and members of his family that he and his family were at a moving picture theatre the night the schoolhouse burned. Defendant had testimony by himself and others that they went swimming at another place the night of the fire, although the others were not as sure of the date as he was. However, defendant admitted that he and Juanita drove out to the schoolhouse about 2:00 A.M. after the County Sheriff had gone out there to see about the fire and he talked to the Sheriff there.

Defendant's brief and motion for new trial made the following allegation of error: "The Court erred in allowing Juanita Boomershine to testify as to her giving birth to a child and the paternity of said child, the same being highly prejudicial." However, this matter was brought into the case by defendant's counsel. In his cross-examination of Sheriff Selinger, called as a witness by the State, the following occurred:

"Q. The Boomershine girl came to you later, didn't she? A. No sir.

"Q. She came to you and wanted to get ahold of Crocker, didn't she? A. No, sir.

"Q. She came to you and said she was pregnant and wanted to get ahold of Crocker, didn't she? A. No, sir.

"Q. Wanted him to get out of the Navy? Was he in the Navy? A. Yes, sir.

"Q. That is the reason you couldn't get him? A. I wrote to the Navy Department and they said he was at sea or something. I can't tell you just what they did say. The letter is at home.

"Q. The reason you were unable to arrest him wasn't because he ran off, it was because he went back to the call of duty, is that right? A. He was back in the Navy.

"Q. When did you talk to Boomershine about this first? A. The first time I talked to Juanita Boomershine was the day Joe Jackson was arrested, whenever that was. * * *

"Q. She hadn't talked to you at all about trying to get Millard back because she thought she was pregnant? A. She did not."

When Juanita was called as a witness for the State, the following occurred upon direct examination:

"Q. You have a child, don't you, Juanita? A. Yes.

"Q. Does it have a father?

"Mr. McIlrath: I object to that. He knows that is true. I object to that as immaterial. Does not prove or disprove anything.

"The Court: I believe you brought that out in cross examination a while ago, didn't you? The objection is overruled.

"Q. Do you have a child? A. Yes.

"Q. How old is the child? A. It is six months the 18th of this month.

"Q. How old are you, Juanita? A. Twenty-one.

"Q. Who is supporting this child? A. Myself.

"Mr. McIlrath: I object to that as not being material. I ask that the jury be discharged.

"The Court: I don't see it makes any difference who is supporting her. You said you were, didn't you? (Addressing the witness)

"The Witness: Yes, sir.

"Mr. McIlrath: I object to that. There is no purpose in that. That doesn't prove anything.

"The Court: You have killed a lot of time here. It is just a time killer. Go ahead.

"Mr. McIlrath: It is prejudicial. I ask that the jury be discharged at this time.

"The Court: That will be denied."

■ Defendant says the Court allowed the State to go into an immaterial collateral matter. However, defendant first brought the matter into the case by asking the Sheriff about Juanita's pregnancy. Defendant indicates in his brief that he wanted to show she had an illegitimate child "for the purpose of attacking her credibility as a witness"; and he had shown this as to Louise Sellers on her cross-examination. See State v. Davis, 284 Mo. 695, 225 S.W. 707. What the State was permitted to show brought out this fact more clearly than defendant had done in his cross-examination of the Sheriff. Defendant says he was not being tried for being the father of the child or for non-support of the child and that it was prejudicial to show who was supporting the child, but no such objection was made. The judge did indicate his view that this matter was immaterial and stopped further inquiry about the child. Nothing was shown then as to the paternity of the child. It is usually held that a defendant is not in a position to complain of the State inquiring about matters brought into the case by his own questions. State v. Grubb and Asher, 201 Mo. 585, 99 S.W. 1083; State v. Cohen, 254 Mo. 437, 162 S.W. 216; State v. Cropper, 327 Mo. 193, 36 S.W.2d 923; State v. Marlin, Mo.Sup., 177 S.W.2d 485. Certainly the implications of defendant's cross-examination of the Sheriff was that Juanita was claiming defendant was responsible for her pregnancy and wanted to get him out of the Navy to marry her and to support the child. (Defendant so testified on his own direct examination hereinafter set out.) The State's direct examination of Juanita did not bring out any more than that. Under these circumstances we cannot say there was any abuse of discretion of the Court in refusing to discharge the jury which was the only action requested.

When defendant took the stand as a witness in his own behalf the following occurred on his direct examination:

"Q. I believe Miss Boomershine did try to get you to marry her, didn't she? A. It was talked.

"Q. She tried to get you to do that, didn't she? A. Yes, sir—

"Q. Didn't she accuse you of being the father of her unborn child? A. Yes, sir.

"Q. She tried to get you out of the Navy to come back and marry her, didn't she? A. Yes.

"Q. You refused to do that, didn't you? A. Yes."

Thereafter, on cross-examination, defendant was asked whether he regarded Juanita as his intended wife, whether he was in love with her (he said: "I may have thought I was") and about their correspondence after he went back to the Navy. He said that she wrote him she was pregnant and wanted money. He was asked about what he wrote to her, shown a letter and asked if he did not write in it that he "wanted her to do something about getting rid of it" so they "could start married life together without a baby" when he came back. He said: "I did write the letter, but I don't think it was meant exactly the way it was worded." Defendant's only allegation of error in his brief, and in his motion for new trial, which could refer to this matter is the following: "The court erred in allowing the prosecuting attorney to question the defendant on collateral issues and after the defendant having answered, allowing the state to produce and read letters and give other testimony in rebuttal of collateral issues, the State being bound by said answers."

■ This is not a compliance with Rule 27.20, 42 V.A.M.S. ('requiring grounds to

be "set forth in detail and with particularity") sufficient to preserve anything for appellate review, because it does not state what letters or what issues and testimony were meant. State v. Tillet, Mo.Sup., 233 S.W.2d 690; State v. Hagerman, Mo.Sup., 244 S.W.2d 49; State v. Johnson, 362 Mo. 833, 245 S.W.2d 43; State v. Rose, Mo.Sup., 249 S.W.2d 324; State v. McCormack, Mo. Sup., 263 S.W.2d 344. The record does not show that any letters were read to the jury; and it cannot reasonably be contended that defendant was cross-examined as to matters not referred to in his examination in chief, in violation of Section 546.260, because this matter was brought out by his counsel as hereinabove shown. Furthermore, defendant's argument that the state could not cross-examine him to the extent it did, because it was bound by his answers to questions as to such a collateral matter, is without merit. This is true because defendant made no denial of anything he was asked concerning this matter. Some of his answers were indefinite but they were not denials.

■■ Another allegation of error made by defendant is that after defendant's witness Sam Richeson (Joe Jackson's attorney) testified that Juanita testified at the Jackson preliminary hearing that she did not see either the woodshed or the schoolhouse set on fire. (He said: "She said she had been asleep in the car and woke up and saw the woodshed burning.") On cross-examination he was asked if at the Jackson trial Juanita did testify that she did see them set the fire at the woodshed and he answered: "Yes, she said that she did see it." (Juanita on cross-examination had denied that she said she was asleep "when they were trying to get it to burn": or that she said she "didn't know anything about them setting the fire.") The only objection made was: "That isn't proper cross-examination." Defendant now says: "This was an attempt by the State to use the testimony in another case, which would be purely hearsay evidence in this case, to back up the statement of its own witness." However, the rule is stated in State v.

Maggard, 250 Mo. 335, 157 S.W. 354, and State v. Emma, 324 Mo. 1216, 26 S.W.2d 781, 784, as follows: "'Where a witness is impeached by proof of variant acts or statements, relevant evidence of the witness' prior statements, correspondent with his testimony, are admissible for the purpose of rehabilitation.'" See also Williams v. St. Louis Public Service Co., Mo. App., 245 S.W.2d 659; State v. Emrich, Mo.Sup., 250 S.W.2d 718. Therefore, this assignment must be overruled.

Defendant's final contentions are that "the court erred in stating to the jury when they failed to agree and asked him whether or not leniency could be granted by stating to them that he could grant leniency but that he was not bound to do so, when as a matter of fact no parole can be granted or leniency shown by the court when a person is adjudged guilty of 'arson'" (Citing Sec. 549.-080); and that "the court erred in informing the jury that if they could not agree he had made arrangements to hold them all night at hotel accommodations, and let them continue to deliberate on said issues next day, thus forcing them for convenience to pass upon said cause without proper and due deliberation."

■ These assignments cannot be considered. In the first place, there is nothing in the record about either incident. "Nothing is better settled than that unverified allegations in a motion for new trial in a criminal case do not prove themselves and cannot be considered unless substantiated by the record." State v. Henderson, 356 Mo. 1072, 204 S.W.2d 774, 780; State v. Gaddy, Mo.Sup., 261 S.W.2d 65. Moreover, the only thing presented here is a copy of an affidavit purported to have been made by two jurors, on November 29, 1954, more than ten months after the motion for new trial had been overruled by the trial court. There is no authority for filing in this Court such a document that was never before the trial court. Furthermore, "it is well-settled law in this state that a juror will not be heard to impeach his own verdict or the verdict of a jury of which he was a member."

State v. Gabriel, 342 Mo. 519, 116 S.W.2d 75, 79, and cases cited; State v. Gaddy, supra.

We find no error respecting the sufficiency of the information, verdict, judgment and sentence.

The judgment is affirmed.

All concur.