**STATE of Missouri, Respondent,**

v.

**Brian B. FASSERO, Appellant.**

**No. SC 88894.**

Supreme Court of Missouri, En Banc.

June 30, 2008.

Craig A. Johnson, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen Kramer, Asst. Atty. Gen., Jefferson City, for Respondent.

MICHAEL A. WOLFF, Judge.

Brian Fassero's appeal of his conviction and sentence for first-degree child molestation raises two significant issues:

Did the conviction in Fassero's second trial—which followed the grant of a mistrial when the first trial jury reported a deadlock—violate Fassero's right under the double jeopardy provision of the United States Constitution?

Did the trial court err in the penalty phase in admitting evidence of an Illinois indictment for aggravated sexual abuse of a child?

## Facts

Fassero was arrested in February 2003 on suspicion that he inappropriately touched a ten-year-old girl. He was charged with statutory sodomy in the first degree under section 566.062[1] and, in the alternative, first degree child molestation under section 566.067.

Fassero's first trial began in June 2004. A little over four hours after the jury began deliberations, the jury sent the judge a note stating that, "[t]he jury deliberated vigorously and came to a final vote of 10 not guilty and 2 jurors voting guilty." Upon receiving this note, the judge called the jury back into the courtroom and questioned the jurors about their deliberations:

> "THE COURT: ... Let the record show it is now 2:35 p.m. The jury has been deliberating a little over four hours. Mr. Raymond, are you the Foreperson of the jury?
>
> JUROR RAYMOND: Yes, your Honor.
>
> THE COURT: I was handed a note from the jury a few minutes ago that says basically the jury deliberated vigorously and is not at this time able to reach a unanimous verdict; is that correct?
>
> JUROR RAYMOND: That's correct, your Honor.
>
> THE COURT: All right. And I don't want you to make any statements about how many votes there were for guilty or how many votes there were for not guilty, and we are not going to ask each of you what your vote is at this time, but according to the note that you sent me,

the jury is split ten to two; is that correct?

> JUROR RAYMOND: That's correct.
>
> THE COURT: All right. And it's been a few minutes since you gave me this. We had to get everybody back in the courtroom. Has there been any change in that split since you wrote this note to me about fifteen minutes ago?
>
> JUROR RAYMOND: No, there hasn't.
>
> THE COURT: And the jury has at this time deliberated for about four—about five and a half hours. My suggestion to you at this time is whether or not you believe any further—maybe it's four and a half hours, I am sorry, whether or not you believe any further deliberation would result in the jury being able to reach a unanimous verdict in this case?
>
> JUROR RAYMOND: We discussed it and, no, no one is willing to change their decision.
>
> THE COURT: And so it's your opinion that you would not be able by continued deliberation in good faith to reach a unanimous verdict?
>
> JUROR RAYMOND: That's correct.
>
> THE COURT: Everyone who agrees with the statement that your Foreperson just made, please raise your hand at this time. For the record, the Court notes that each and every juror has raised his or her hand."

Based on the jurors' statement that they were unable to reach a unanimous verdict, the trial court declared a mistrial.

When Fassero's second trial began in January 2005, Fassero moved to dismiss on the grounds that retrial after the first court's declaration of mistrial would violate his federal constitutional rights under the Double Jeopardy Clause of the Fifth Amendment, made applicable to the states

---

1. All statutory references are to RSMo 2000.

by the 14th Amendment. The court overruled the motion.

The state presented evidence that, while in the ball pit of "Tumble Drum," a local indoor play area, Fassero inserted his finger into the vagina of A.A., age 10, who was playing in the ball pit with a number of other children. Fassero's daughter, age six, was also in the ball pit. While playing, Fassero's daughter began to cry, and Fassero went into the ball pit. He began playing with his daughter and with a number of children, including A.A., who had relatives outside the pit watching the play. The evidence showed that, while playing with the children, Fassero reached down and put his finger in A.A.'s vagina.

At trial, the state called Jennifer Comte–Fassero, Fassero's ex-wife, to testify about Fassero's reputation for truthfulness. Comte–Fassero testified that Fassero had a reputation for being untruthful. During cross-examination, defense counsel asked Comte–Fassero whether she trusted Fassero to care for their daughter. Comte–Fassero replied that she did not trust Fassero with their child. On re-direct, the state asked why Comte–Fassero did not trust Fassero to care for their daughter. Comte–Fassero replied, "I believe he was molesting her." Defense counsel moved for a mistrial. The trial court overruled the motion.

The next day, defense counsel requested that the court instruct the jury to disregard Conte–Fassero's testimony regarding her belief that Fassero was molesting their daughter. In response, the trial court instructed the jury as follows: "Ladies and gentlemen, at this time the court will advise the jury that only the following question asked and answer given by Jennifer Comte–Fassero be disregarded. QUESTION: What was your opinion as why didn't you trust Mr. Fassero with your daughter at that point? ANSWER: I believe that he was molesting her."

The jury found Fassero guilty of first degree child molestation. During the penalty phase, the state presented an indictment from Madison County, Illinois, charging Fassero with two felony counts of aggravated criminal sexual abuse. Fassero objected on the grounds that the indictment was not "history and character" evidence admissible during the penalty phase under section 557.036. The trial court overruled Fassero's objection and admitted the indictment into evidence.

The jury recommended that Fassero be sentenced to a 15–year prison term, and judgment was entered in accordance with the jury's guilty verdict and sentencing recommendation. Fassero appealed. Following opinion in the court of appeals, this Court granted transfer and has jurisdiction. Mo. Const. art. V, sec. 10.

### Double Jeopardy

The double jeopardy clause of the Fifth Amendment, which applies to the states through the 14th Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life and limb." U.S. Const. Amend. V.

Double jeopardy protection attaches when the jury is impaneled and sworn. *State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 51 (Mo. banc 2006) (citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)). Once double jeopardy protection attaches, the defendant has a right to have his trial completed by the jury that has been selected. *Id.* (citing *United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Oregon v. Kennedy*, 456 U.S. 667, 671–72, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)).

■ Although double jeopardy protection generally gives a defendant a right to have his trial completed by the jury selected, not all declarations of mistrial bar retrial. When a defendant requests or consents to a mistrial, for example, double jeopardy does not prohibit reprosecution. If the defendant opposes the mistrial, double jeopardy will bar retrial unless there is a "manifest necessity" for the trial court's declaration of mistrial. In this case, the court in Fassero's first trial declared a mistrial *sua sponte*. Since Fassero neither sought nor agreed to a mistrial, the first court's mistrial must be justified by "manifest necessity."

■ Manifest necessity exists when "a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *State v. Fitzpatrick*, 676 S.W.2d 831, 835 (Mo. banc 1984) (quoting *United States v. Dinitz*, 424 U.S. 600, 607, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976)). The prototypical example of "manifest necessity" sufficient to remove the double jeopardy bar in a case of a court-declared mistrial is the jury's declaration that it is unable to reach a verdict. *Oregon v. Kennedy*, 456 U.S. at 672, 102 S.Ct. 2083. Unless the trial court abuses its discretion in finding that the jury is genuinely deadlocked, the constitution allows reprosecution of the defendant after a mistrial resulting from a hung jury. *See generally*, *United States v. Perez*, 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165 (1824).

■ Whether or not there is manifest necessity sufficient to justify mistrial is a case-specific inquiry. *Kemper*, 191 S.W.3d at 51. "Manifest necessity" is not a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge. *Arizona v. Washington*, 434 U.S. at 506, 98 S.Ct. 824. A trial court has the authority "to discharge a jury from giving any verdict, whenever, in their opinion, taking all circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere." *United States v. Perez*, 22 U.S. at 580.

■ Because the decision rests within the sound discretion of the trial court, a declaration of mistrial will not be disturbed on appeal absent an abuse of discretion. *Kemper* at 49 (citing *State v. Clover*, 924 S.W.2d 853, 856 (Mo. banc 1996)). An abuse of discretion occurs when the trial court's ruling "is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Kemper* at 49 (citing *State ex rel. Webster v. Lehndorff Geneva, Inc.*, 744 S.W.2d 801, 804 (Mo. banc 1988)).

After the jury had deliberated for a little more than four hours in Fassero's first trial, the trial court determined that the jury was deadlocked. Based on its determination that the jury was hung, the trial court, on its own motion, declared a mistrial. Fassero argues that declaring the mistrial was an abuse of discretion because there was no manifest necessity to do so.

■ Fassero contends that the circumstances before the court at the time it declared mistrial were not sufficient to indicate that the jury was genuinely deadlocked. He points to several factors in support of his contention that the trial court abused its discretion in declaring the mistrial: the length of deliberations, the time of day when the court declared mistrial, and the trial court's failure to give a "hammer" instruction.

### The Length of Deliberations and Time of Day

The trial court received a note from the jury indicating deadlock a little more than four hours after the jury had begun deliberations. Based on the jury's own statement that it was unable to come to a decision, the trial court declared a mistrial. Fassero argues that the length of the trial, which spanned the course of four days, necessitated more than four hours of jury deliberation. Fassero also points out that the court declared the mistrial in the middle of the afternoon. With more than two hours remaining until the close of business, Fassero contends that time pressure was not a consideration in the trial court's decision whether to require further jury deliberation.

Fassero cites *United States v. Hotz*, 620 F.2d 5 (1st Cir.1980), where the First Circuit dismissed a subsequent indictment following a mistrial that was granted after a short period of deliberations. Unlike *Hotz*, the record in this case shows that the trial court questioned all 12 jurors in open court about their ability to reach a unanimous verdict. All 12 jurors indicated that they could not.

This Court sees only the jurors' words typed in transcripts. The trial judge, unlike the members of this Court, watches the jurors as they respond and can assess their sincerity, their intensity, and their candor. Relying upon the jury's report that it was unable, after vigorous deliberations, to reach a decision, the trial court declared a mistrial.

That the mistrial was declared after only four hours of deliberations is not a *per se* abuse of discretion. *See, State v. Turner–Bey*, 812 S.W.2d 799 (Mo.App. 1991). Since the trial court's decision was made after careful consideration of the jury's own report of deadlock, the time of day at which the mistrial was declared is insignificant in this case.

### The Trial Court's Failure to Give a "Hammer" Instruction

Fassero contends that, because the jury was numerically close to a verdict (ten voting "not guilty", two voting "guilty"), the trial court should have given the jury the "hammer" instruction, MAI–Cr3d 312.10, before declaring a mistrial.[2]

A trial court may give the hammer instruction when it "deems it appropriate and when the length of deliberation or communication from the jury causes the Court to believe that the jury may be deadlocked." MAI–CR3d 312.10, Notes on Use 2; *See also State v. Johnson*, 948 S.W.2d 161, 164 (Mo.App.1997); *Goudeau v. State*, 152 S.W.3d 411, 416 (Mo. App.2005). While a trial court *may* give the hammer instruction in situations where the court "deems it appropriate", the decision to use the hammer instruction lies within the discretion of the trial judge. Submission of MAI–CR3d 312.10 to the jury is never mandatory. As such, the trial court's decision not to give the jury a hammer instruction was not an abuse of discretion.

2. MAI CR3d 312.10, Missouri's "hammer instruction", states, "[y]ou should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court, nor should a juror agree to a verdict of guilty unless he is convinced of the defendant's guilt beyond a reasonable doubt."

## Did Retrial Violate Article I, Section 19?

Related to his double jeopardy claims is Fassero's argument the trial court trial did not have "jurisdiction" in his second trial because the second trial did not commence within "time limitations" set forth in article I, section 19 of the Missouri Constitution.

Article I, section 19 provides that "if the jury fails to render a verdict the court may, in its discretion, discharge the jury and commit or bail the prisoner for trial at the same or next term of court." Fassero's first trial ended in a mistrial on June 18, 2004. His second trial began on January 18, 2005. Under local rules governing the Eleventh Judicial Circuit, where Fassero was tried, "[t]he terms of Court shall commence on the second Monday in January, April, July and October." Thus, Fassero argues that, under art. I, sec. 19, his second trial should have commenced before the end of June ("the same term") or during the next term, from July–September 2004. Because his second trial did not begin until January 18, 2005, Fassero asserts that the trial court did not have jurisdiction. Fassero raises this issue for the first time on appeal.

■ Generally, a party on appeal "must stand or fall" by the theory on which he tried and submitted his case in the court below. *Walker v. Owen*, 79 Mo. 563, 568 (Mo.1883). Under this general rule, issues that are not raised in the trial court are waived. *Id.* Although Fassero acknowledges this general rule, he argues that article I, section 19 deprived the second trial court of jurisdiction. And "jurisdictional" issues, he contends, may be raised for the first time on appeal. *Searcy v. State*, 981 S.W.2d 597, 598 (Mo.App. 1998).

■ Fassero's argument results from a misunderstanding of jurisdiction. Jurisdiction describes the power of a court over the person of the defendant (personal jurisdiction) and the authority of the court to hear the particular kind of case (subject matter jurisdiction). *See generally*, 21 Am.Jur.2d *Criminal Law* section 503 (2007). The court had power over Fassero's person. It was empowered to hear criminal cases. The court, thus, had jurisdiction.

■ Fassero did not object in the circuit court to the timing of his second trial under art. I, sec. 19. His art. I, sec. 19 objection is a constitutional claim that, to be preserved for appellate review, must be made at the first opportunity. *State v. Chambers*, 891 S.W.2d 93, 103–4 (Mo. banc 1994). If not raised at the first opportunity in the circuit court, a constitutional claim is waived and cannot be raised here.[3] *Id.*

---

3. In the absence of cited authority to support Fassero's theory that the local rules of court determine the "term of court," as that phrase is used in art. I, section 19, the Court declines to review for plain error on the part of the trial court. A statute, section 478.205, describes "term of court" and a rule, Rule 20.01(c), provides that a "term of court" does not affect the power of a court to act. Neither the statute nor the rule on its face supports Fassero's theory. Section 478.205 provides that, "[t]o the extent that a term of a circuit court may be required or specified by any provision of law, terms of each circuit court of the state shall be considered as commencing on the second Mondays in February, May, August and November of each year; provided, however, that no court by reason of this section shall be required to hold court on the first day of any such term and provided further that each circuit court for convenience may provide by local court rule for a different number of terms per year and for terms to commence on different dates." Rule 20.01(c) provides: "The period of time provided for the doing of any act or the taking of any proceeding is not affected or limited by the continued existence or expiration of a term of court. The continued existence or

### Jennifer Comte–Fassero's Testimony

Fassero argues that the trial court abused its discretion by not ordering a mistrial after Jennifer Comte–Fassero, Fassero's ex-wife, testified that she believed Fassero had molested their daughter. The state called Comte–Fassero to testify about Fassero's reputation for truthfulness. During cross-examination, defense counsel asked Comte–Fassero whether she trusted Fassero with their child. Comte–Fassero replied that she did not. On re-direct examination, the state asked Comte–Fassero why she did not trust Fassero with their daughter. Comte–Fassero replied that she believes that Fassero has molested their daughter. Defense counsel moved for a mistrial, a motion which the trial court overruled.

 Evidence of prior bad acts is inadmissible for the purpose of demonstrating the defendant's propensity to commit the crime with which he is presently charged *State v. Ellison,* 239 S.W.3d 603, 606 (Mo. banc 2007). Comte–Fassero's testimony that Fassero had molested their child is thus, under the general rule, inadmissible as evidence of prior bad acts. While evidence of a criminal defendant's prior bad acts is generally inadmissible, a defendant is not in a position to complain of the State inquiring about matters brought into the case by his own question. *State v. Crocker,* 275 S.W.2d 293, 296 (Mo. 1955); *State v. Grubb et al.,* 201 Mo. 585, 99 S.W. 1083; *State v. Cohen,* 254 Mo. 437, 162 S.W. 216; *State v. Cropper,* 327 Mo. 193, 36 S.W.2d 923. In other words, a defendant may not provoke a reply to his own argument and then claim error. *State v. Kelly,* 689 S.W.2d 639, 640–641 (Mo.App. 1985) (citing *State v. Kirksey,* 528 S.W.2d 536 [8–10] (Mo.App.1975)).

expiration of a term of court in no way affects the power of a court to do any act or take any proceeding in any criminal proceedings pend-

 By asking Comte–Fassero whether she trusted Fassero with their daughter, defense counsel "opened the door" to the state's questions—on redirect examination—about the reasons for Comte–Fassero's distrust. In the absence of Fassero's door-opening question, Comte–Fassero's testimony would not have been proper. But Fassero may not complain about "invited error," that is, testimony that was invited by his own questions. *Crocker* at 296. The trial court did not err in overruling Fassero's motion for a mistrial based on his ex-wife's testimony that he had molested their daughter.

### Admission of Illinois Indictment During the Penalty Phase

During the penalty phase of Fassero's second trial, the state presented evidence of a 2003 Illinois indictment for criminal sexual abuse against a child under age 13. Fassero argues that evidence of the Illinois indictment during the penalty phase was not legally relevant and was, therefore, inadmissible.

During the penalty phase of a criminal trial, both the state and the defendant may present evidence supporting or mitigating punishment. Section 557.036.3 provides that such evidence may include, "within the discretion of the court, evidence concerning the impact of the crime upon the victim, the victim's family and others, the nature and circumstances of the offense, *and the history and character of the defendant." Id.* (emphasis added).

 As a general rule, the trial court has discretion during the punishment phase of trial to admit whatever evidence it believes may be helpful to the jury in

ing before it, which it is otherwise by law authorized to do or take."

assessing punishment. *State v. Winfield,* 5 S.W.3d 505, 515 (Mo. banc 1999) (citing *State v. Kinder,* 942 S.W.2d 313, 331 (Mo. banc 1996)). Although the state may present evidence of criminal conduct for which the defendant was never convicted, the penalty phase jury may only consider such evidence if proven by a preponderance of the evidence. *State v. Clark,* 197 S.W.3d 598, 601 (Mo. banc 2006) (citing *United States v. Watts,* 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997)).

During the penalty phase of Fassero's trial, the state could have introduced evidence that Fassero committed the acts of criminal sexual abuse described in the indictment to prove that Fassero had a history of molesting children. Section 557.036.3; *State v. Winfield,* 5 S.W.3d 505, 515; *State v. Ferguson,* 20 S.W.3d 485, 500 (Mo. banc 2000); *State v. Clark,* 197 S.W.3d 598, 601 (Mo. banc 2006). If the state had proven by a preponderance of the evidence that Fassero committed the underlying acts of sexual abuse, the jury could have considered these acts in assessing Fassero's punishment. *Id.*

 The state did not present evidence that Fassero had committed the acts of sexual abuse charged in the Illinois indictment, however. The state presented only the indictment itself. And, while the indictment is relevant to prove that Fassero was *indicted* in 2003 on charges of criminal sexual abuse, it is not relevant to prove that Fassero *engaged* in the conduct alleged in the indictment. In other words, the Illinois indictment was relevant only to prove that Fassero had been charged with a crime, not that Fassero had actually engaged in any criminal conduct. As such, it was not "history and character" evidence authorized by section 557.036.3 and was, therefore, inadmissible.

 In evaluating improper admission of evidence, this Court will only re-

verse if the improper admission was prejudicial. *State v. Black,* 50 S.W.3d 778, 786 (Mo. banc 2001). Prejudice in this case requires that the Court determine whether there is a reasonable probability that the jury would have imposed a lesser sentence but for the erroneously admitted Illinois indictment. *Id.* In evaluating whether admission of the Illinois indictment was outcome determinative, it is important to consider the highly inflammatory nature of sexual abuse charges in the indictment. The indictment alleged that Fassero fondled the vaginal area of a child and the breast of either the same child or another child, charges that are very similar to molestation charged in the present case. Based on the evidence presented during penalty phase, the jury recommended a prison sentence of 15 years, the maximum authorized punishment. Given the nature of the charges described in the indictment and the severity of the sentence imposed, the risk that the admission of the indictment resulted in prejudice is high. Accordingly, Fassero's sentence is vacated and the case remanded for a new penalty phase hearing and a new sentence.

## Conclusion

The judgment as to the sentence is reversed, and the case is remanded for a new penalty phase and sentencing. In all other respects, the judgment is affirmed.

All concur.