Richard G. and Jerri A. CARROLL, The Surviving and Natural Parents of Jarrod M. Carroll, Appellants,

v.

David K. KELSEY, Respondent.

No. WD 66616.

Missouri Court of Appeals, Western District.

Aug. 14, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 25, 2007.

Application for Transfer Denied Oct. 30, 2007.

Randy W. James, Lauren P. Allen, Lee's Summit, MO, Mark E. Parrish, Kansas City, MO, for appellants.

Michael E. McCausland, Brian M. Bartalos, Kansas City, MO, for respondent.

Before BRECKENRIDGE, P.J., LOWENSTEIN and HOLLIGER, JJ.

HAROLD L. LOWENSTEIN, Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Richard and Jerri Carroll appeal the judgment entered on a verdict in favor of the defendant, David Kelsey, in a wrongful death suit after their son, Jarrod, was killed after he was hit by a pickup truck driven by defendant, David Kelsey. Jarrod, then fifteen years old, was riding his bicycle southbound against traffic along the curb of the northbound lane of Todd George Road in Lee's Summit. With northbound traffic approaching, Jarrod crossed over two lanes to follow the curb in the southbound lane. Kelsey, southbound, approached Jarrod from behind as the boy traveled along the southbound fog line. Rather than follow the bicycle, Kelsey pulled over to pass just as Jarrod began to swing back across the southbound lane. Kelsey slammed on the brakes but hit the left side of Jarrod's bicycle at the end of the skid. Jarrod struck his head and later died of his injuries. Kelsey was the only witness to the accident.

In their wrongful death suit, the Carrolls claimed that Kelsey was negligent in failing to pass Jarrod at a safe distance, thereby striking the Jarrod's bicycle from behind. Kelsey claimed Jarrod made a

sharp left turn into the path of the truck just as Kelsey began to pass and the truck struck the left side of Jarrod's bike. The jury returned a verdict finding Jarrod 100% at fault for the accident.

## II. Discussion

The Carrolls raise four points on appeal. In their first point, the Carrolls claim that the contributory negligence instruction was not supported by sufficient evidence in the record and was additionally defective for failure to include specific clarifying language. In their second point, they contend the trial court erred in admitting the opinion testimony of the investigating officer. The Carrolls then challenge the trial court's refusal to sanction Kelsey for spoliation of evidence in their third point. In their fourth point, they argue that the trial court erred in excluding evidence of Kelsey's pending divorce.

### A. Instructional Error

In their first point on appeal, the Carrolls challenge the submission of the contributory negligence instruction to the jury. They argue that the instruction was not supported by sufficient evidence in the record and that the issue of whether or not Jarrod intended to turn left was, at best, a controverted fact subject to inclusion of language mandated by *Welch v. Hyatt*, 578 S.W.2d 905 (Mo. banc 1979) (hereinafter "the *Welch* language").

■■■ Instructional error is a matter of law reviewed *de novo* by this court. *Martens v. White*, 195 S.W.3d 548, 557 (Mo. App.2006). An instruction is in error where the appellant can show that the instruction misdirected, misled, or confused the jury. *Id.* However, mere error is not sufficient for reversal; the appellant must also show prejudice resulting from the error. *Williams v. Fin. Plaza, Inc.*, 23 S.W.3d 656, 658 (Mo.App.2000).

### 1. Failure to modify MAI 17.06

■■■ The respondent questions whether any error associated with the failure to include the *Welch* language is preserved for appellate review in that the Carrolls failed to make a substantive, specific objection to the instruction and failed to offer an alternate instruction offering including the language they now claim was omitted in error. To preserve a claim of instructional error, a specific objection must be made stating "distinctly the matter objected to and the grounds of the objection." Rule 70.03. The same objection must also be raised in the motion for a new trial. *Id.* "The rationale behind making objections is to avert error and allow the trial court to make an intelligent ruling." *Gamble v. Bost*, 901 S.W.2d 182, 188 (Mo.App.1995).

Instruction number 6, patterned on MAI 17.06, directed:

In your verdict you must assess a percentage of fault to decedent Jarrod Carroll if you believe:

First, either

decedent Jarrod Carroll failed to keep a careful lookout, or

decedent Jarrod Carroll failed to signal an intention to turn, and

Second, decedent Jarrod Carroll, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence of decedent Jarrod Carroll directly caused or directly contributed to cause the death of decedent.

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of care that a very careful boy of the same age, capacity and experience would use under the same or similar circumstances.

At conference, counsel for the Carrolls objected to this instruction stating: "The only objection I have to the submission is that the—I don't believe there is any evidence with regard to any duty on the part of Jarrod Carroll to signal an intention to turn." However, upon the court's inquiry, the Carrolls did not offer an alternate proposed instruction.

In the motion for a new trial, the Carrolls again raised the question of sufficient evidence to support the instruction. However, they also argued that the issue of whether or not Jarrod intended to turn left was a controverted fact and was, therefore, subject modification per *Welch v. Hyatt*, 578 S.W.2d 905, 915 (Mo. banc 1979). In *Welch*, the Supreme Court stated, "when a turn is controverted and disputed fact, MAI 17.06 should require a finding that (1) there was a turn and (2) that there was a failure an intention to turn." *Id.*

The Carrolls claim that the additional grounds for error raised in the motion only provide a specific basis for the general objection made at trial. They properly cite *Porta–Fab Corp. v. Young Sales Corp.*, 943 S.W.2d 686 (Mo.App.1997), for the proposition that a general objection to an instruction at trial may be later specified in a motion for a new trial. *Id.* at 691. However, in *Porta–Fab*, the theory of the objection at trial, that the verdict director was based upon the wrong MAI, was the same as the theory put forth in the motion for a new trial and later upon appeal. *Id.* That is not the case here.

■ At trial, the Carrolls only challenged the evidentiary basis for the instruction. In the motion for a new trial and upon appeal, the Carrolls additionally challenged the language of the instruction for failure to include the *Welch* language. However, "a point on appeal must be based upon the theory voiced in the objection at trial and [an appellant] cannot expand or change on appeal the objection as made." *Zakibe v. Ahrens & McCarron, Inc.*, 28 S.W.3d 373, 387 (Mo.App.2000). That an instruction is not supported by evidence in the record is a claim of error distinct from a claim that an instruction is deficit for failure to include clarifying language.

In arguing that the instruction was defective for failure to include the *Welch* language, the Carrolls put forth a theory other than that raised at trial. Because error associated with the failure to include the *Welch* language was not raised at trial, it is not properly preserved for appellate review. Therefore, this court will limits its review of the Carrolls' claim of instructional error to whether the disputed instruction was supported by sufficient evidence in the record.

## 2. SUFFICIENT EVIDENCE SUPPORTING THE CONTRIBUTORY NEGLIGENCE INSTRUCTION

■ A jury instruction must be supported by substantial evidence in the record. *Griffin v. Kansas City S. Ry. Co.*, 965 S.W.2d 458, 462 (Mo.App.1998). If the instruction is submitted in the disjunctive, "all submissions must be supported by substantial evidence." *Messina v. Prather*, 42 S.W.3d 753, 759 (Mo.App.2001). "Substantial evidence is competent evidence from which a trier of fact can reasonably decide the case." *Mathis v. Jones Store Co.*, 952 S.W.2d 360, 366 (Mo.App. 1997). This court must view the evidence in the light most favorable to the proponent of the proposed instruction, giving the proponent the benefit of all reasonable inferences and disregarding evidence to the contrary. *King v. Unidynamics Corp.*, 943 S.W.2d 262, 267 (Mo.App.1997).

Kelsey was the only witness to the accident. He testified that he was progressing southbound on Todd George Road

when he saw Jarrod, also southbound. Jarrod was on the west side of the road, traveling against northbound traffic. When Kelsey first saw Jarrod, two northbound cars were approaching. Still travelling southbound, Jarrod crossed the road from the west side of the road, against traffic, to the east side, to begin traveling with the traffic flow. Kelsey, about a block away, assumed Jarrod changed sides to avoid oncoming traffic but he did not know if he was just crossing the road or if he planned to turn west at the next intersection.

Jarrod continued southbound on Todd George Road through the intersection. Kelsey, still traveling at twenty-five to thirty miles per hour, began to move left to go around Jarrod. Jarrod was riding on the right hand fog line; Kelsey did not slow down to follow Jarrod. The southbound lane of Todd George Road began to narrow at that point, the northbound lane was about four feet wider than the southbound as Kelsey approached. Kelsey testified that as he began to move left to go around Jarrod, Jarrod moved farther right. Kelsey thought that move indicated Jarrod was aware of the approaching truck. Kelsey stated that he planned to move left of the centerline and give Jarrod room as he passed. However, as Kelsey began to pass, Jarrod turned in front of him, characterized as a "sharp elbow" turn, directly into the path of Kelsey's truck. Kelsey stated that Jarrod did not look or signal before he began the move. Kelsey stated he hit the left side of Jarrod's bike.

In response to cross-examination, Kelsey reiterated that his truck struck the left side of Jarrod's bicycle after the boy swung in front of the truck in a ninety-degree turn. In response to further questioning, Kelsey stated that he did not anticipate any reason that Jarrod would turn

left in front of him and that Jarrod never looked back at him. On redirect, Kelsey stated that Jarrod began to accelerate or "get up on the pedals" right before he turned.

· The defense also presented the evidence of Robert McKinzie, an accident reconstruction specialist, who testified that the bicycle was found on its right side. He testified that he believed that the bicycle was at least at a forty-five degree angle to Kelsey's truck at the time of impact. Moreover, photographs in evidence demonstrated that both the bicycle and the truck were slightly over the centerline in the northbound lane of traffic, consistent with Kelsey's testimony.

The record contained sufficient evidence that Jarrod intended to turn left without looking or signaling to support the contributory negligence instruction. The Carrolls' first point is denied.

### B. ADMISSION OF OPINION EVIDENCE

The Carrolls next challenge the admission of the testimony of the investigating officer about whether he had ever passed a bicycle in the no-passing zone of Todd George Road. Over the Carrolls' objection for lack of foundation, the officer testified that he had passed bicycles on Todd George Road and that, as long as there was no oncoming traffic, he did not feel it was unsafe to do so. The exchange concluded with: "You believe as long as no traffic was coming . . . it is perfectly safe to cross over that line a little bit to give the bicycle some room?" The officer replied, "Yes." The Carrolls claim that this exchange was impermissible opinion testimony in that the officer, in admitting he too passed bicycles in a no-passing zone, exonerated any wrongdoing on Kelsey's part.

The Carrolls point out that an expert witness, including an investigating police

officer, "may not state his opinion as to what actions of the parties, if any, contributed to the collision or as to who was at fault in causing the collision." *Stucker v. Chitwood*, 841 S.W.2d 816, 820 (Mo.App. 1992) (quoting *Lollis v. Superior Sales Co.*, 224 Kan. 251, 580 P.2d 423, 431 (1978)). However, the objection at trial as to foundation was insufficient to preserve any error associated with the admission of the officer's opinion testimony. In light of this failure to properly object to the opinion testimony, the Carrolls claim the admission of the disputed testimony constitutes plain error.

 Where error is not properly preserved for appellate review, an appellate court may, at its discretion, grant plain error review pursuant to Rule 84.13(c).[1] However, "[p]lain error review is rarely granted in civil cases." *Rush v. Senior Citizens Nursing Home Dist. of Ray County*, 212 S.W.3d 155, 162 (Mo.App. 2006). To warrant such review, the error must be, on its face, evident, obvious, and clear. *Wilson ex rel. Wilson v. Simmons*, 103 S.W.3d 211, 220 (Mo.App.2003). Under plain error review, this court will only reverse the trial court's judgment where the error constitutes a manifest injustice or a miscarriage of justice that "weaken[s] the very foundation of the process and seriously undermine[s] confidence in the outcome of the case." *Davolt v. Highland*, 119 S.W.3d 118, 136 (Mo.App.2003).

In this case, the disputed testimony was not relevant to any theory of liability pled or submitted to the jury—that in attempting to pass Jarrod in a no-passing zone Kelsey was negligent and such negligence caused Jarrod's death. As such, this court cannot say that the admission of the disputed testimony establishes, on its face, "substantial grounds for believing manifest injustice or miscarriage of justice has occurred." *In re Care & Treatment of Heikes v. State*, 170 S.W.3d 482, 485 (Mo. App.2005). Accordingly, this court declines to grant plain error review. Point denied.

## C. REFUSAL TO SANCTION FOR SPOLIATION OF EVIDENCE

 The Carrolls next contend that the trial court's denial of their motion for sanctions against Kelsey for spoliation of evidence and its refusal to allow the Carrolls a negative evidential inference from the alleged spoliation was prejudicial error. The Carrolls claim that Kelsey intentionally destroyed evidence when he had his truck repaired after he was served with the instant suit. They moved for sanctions against Kelsey for spoliation of evidence and asked that a negative evidentiary inference be given. The court denied the motion and refused to allow the inference. The court also excluded any evidence of when Kelsey repaired his truck. The Carrolls now claim that the court's actions were in error and that they were prejudiced in that their expert could not examine the damage to the truck and they could not rebut Kelsey's testimony about prior damage.

 Spoliation refers to " 'the destruction or significant alteration of evidence.' " *Schneider v. G. Guilliams, Inc.*, 976 S.W.2d 522, 526 (Mo.App.1998). (*quoting Baugher v. Gates Rubber Co.*, 863 S.W.2d 905, 907 (Mo.App. E.D.1993)). "A party who intentionally spoliates evidence is subject to an adverse evidentiary inference." *Baldridge v. Dir. of Revenue*, 82 S.W.3d 212, 223 (Mo.App.2002). The spoliation doctrine is a harsh rule, thus, it requires "evidence showing intentional destruction of the item, and also such de-

---

1. References to rules are to Missouri Rules of Civil Procedure (2007).

struction must occur under circumstances which give rise to an inference of fraud and a desire to suppress the truth. In such cases, it may be shown by the proponent that the alleged spoliator had a *duty*, or should have recognized a *duty*, to preserve the evidence." *Morris v. J.C. Penney Life Ins. Co.*, 895 S.W.2d 73, 77–78 (Mo.App.1995) (internal citations omitted). Destruction of evidence without a satisfactory explanation gives rise to the negative inference against the spoliator. *Brown v. Hamid*, 856 S.W.2d 51, 57 (Mo. banc 1993). The question then becomes whether Kelsey provided the court with a satisfactory explanation.

Kelsey was questioned about the truck repair during his deposition. He testified that right after the accident his insurance company told him he could have the damage repaired if he so chose. He stated that he wanted to wait to repair the truck until he had a second car he could drive in the interim. He purchased the second car in January 2003. He acknowledged that he took the truck to be repaired the week of March 23, almost three weeks after he was served with the suit. He stated that he dropped the truck off prior to leaving on a seven-day trip. He stated further that no one ever told him he could not repair the truck and that neither Carrolls' counsel or their expert ever contacted him to inspect the truck or ask that he not repair the damage.

The Carrolls bore the burden to adduce evidence "of an intentional destruction of the evidence indicating fraud and a desire to suppress the truth." *Moore v. Gen. Motors Corp.*, 558 S.W.2d 720, 733 (Mo. App.1977). Their only evidence to meet this burden was the timing of the repair. From the evidence, the trial court could reasonably conclude that Kelsey provided a satisfactory explanation that outweighed the Carrolls' evidence. The trial court's denial of the motion was neither unreasonable nor arbitrary. The trial court did not abuse its discretion in denying the motion for sanctions and refusing to allow the negative inference. The third point is denied.

### D. EXCLUSION OF EVIDENCE

■■■ The Carrolls next challenge the trial court's grant of Kelsey's motion in limine excluding any evidence about his divorce pending at the time of accident. The Carrolls argue that this evidence was relevant to Kelsey's state of mind. Just prior to the accident, Kelsey had obtained a key to a residence he and his estranged wife jointly owned, and was on the way to meet his girlfriend and inspect the house. The Carrolls contend that because Kelsey stated that he was not in any particular hurry on the day of the accident, they should have been allowed to introduce evidence as to Kelsey's state of mind. The Carrolls contend that evidence about the divorce was relevant to show that Kelsey was likely agitated after meeting with his estranged wife and such agitation contributed to the accident.

■■■■ A trial court enjoys great discretion in the exclusion of evidence and, therefore, is accorded substantial deference upon appeal. *Aliff v. Cody*, 26 S.W.3d 309, 314 (Mo.App.2000). A trial court abuses its discretion in excluding evidence where the "trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Andersen v. Osmon*, 217 S.W.3d 375, 377 (Mo.App.2007) (*quoting Damon Pursell Constr. Co. v. Mo. Highway & Transp. Comm'n*, 192 S.W.3d 461, 466 (Mo.App.2006)). "Failure to admit evidence does not mandate a reversal of a judgment unless the error ma-

terially affected the merits of the action." *Envtl. Waste Mgmt., Inc. v. Indus. Excavating & Equip. Inc.,* 981 S.W.2d 607, 613 (Mo.App.1998). The appellant must show that the trial court's ruling created a "substantial or glaring injustice." *State ex rel. Mo. Hwy. & Transp. Comm'n v. Pracht,* 801 S.W.2d 90, 93 (Mo.App.1990).

Here, the Carrolls have not shown that Kelsey's divorce was in any way relevant to the issues before the court. They simply argue that the information went to his state of mind on the day of the accident. However, the Carrolls did not offer any evidence to indicate that Kelsey and his estranged wife had a volatile relationship or had quarreled the day of the accident.

The trial court did not abuse its discretion in excluding evidence about Kelsey's divorce. Point denied.

### III. CONCLUSION

Although the facts of this case are distressing, the Carrolls fail to raise any error that merits reversal of the trial court's judgment. The contributory negligence instruction was supported by sufficient evidence in the record and the Carrolls failed to preserve for appellate review any further error associated with the instruction. The claim of error as to the investigating officer's testimony was not preserved for appeal and does not merit plain error review. Neither the trial court's denial of the Carrolls' motion for sanctions for spoliation of evidence nor its exclusion of evidence about Kelsey's pending divorce was an abuse of discretion. The judgment of the trial court is affirmed.

HOLLIGER, J. concurs.

BRECKENRIDGE, J. recuses after submission.