MB TOWN CENTER, LP,
Plaintiff/Respondent,

v.

CLAYTON FORSYTH FOODS, INC., Defendant/Appellant.

No. ED 96551.

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 10, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 23, 2012.

Application for Transfer Denied May 29, 2012.

Joann Sandifer, John T. Richmond, Jr., Andrew R. Gilfoil, St. Louis, MO, for Respondent MB Town Center.

Anthony E. Rothert, Grant R. Doty, Michael A. Gross, Co–Counsel, St. Louis, MO, for Appellant.

SHERRI B. SULLIVAN, J.

*Introduction*

Appellant Clayton Forsyth Foods, Inc. (CFF) appeals from the trial court's entry of a permanent injunction against CFF. Angela Lampert and Larry Lampert (the Lamperts, collectively) have been permitted to intervene on appeal as additional Appellants. We affirm the trial court's judgment and remand with directions.

*Factual and Procedural Background*

Appellant CFF is a Missouri corporation. Appellant Larry Lampert is the president of CFF and Appellant Angela Lampert is an employee of CFF.

On July 19, 2004, CFF entered into a Lease Agreement (the Lease) with Forsyth Investments, LLC for certain premises located at 7814 Forsyth Blvd, Clayton, Missouri (the Leased Premises). CFF operated a restaurant known as Lampert's Plush Pig BBQ on the main floor of the Leased Premises. CFF also used the basement for office space and storage.

The original term of the Lease commenced on August 1, 2004, and extended for three years until July 31, 2007. In January 2007, CFF exercised an option to renew the lease for an additional five years.

In August 2007, MB Town Center, LP (MB Town Center or Respondent) entered into a contract to purchase the building for the purpose of demolishing it for redevelopment. Forsyth Investments, LLC notified CFF that it was selling the building and was providing one year's notice of the

lessor's termination of the Lease pursuant to the Lease's terms of renewal.

On February 21, 2008, MB Town Center closed on the purchase of the building and assumed all rights and obligations of the lessor under the Lease. CFF disputed Forsyth Investments' ability to terminate the Lease and MB Town Center filed a Petition for Declaratory Relief against CFF. In August 2009, the circuit court issued a Judgment holding that the Lease had been terminated effective January 16, 2008 and that the parties had a month to month tenancy since that time. Following the circuit court's judgment, CFF ceased paying any rent due to MB Town Center.

In December 2009, MB Town Center became aware that the insulation on the pipes in the basement of the Leased Premises contained asbestos material and began the remediation process. On December 31, 2009, MB Town Center placed signs around the area of concern in the basement identifying the location of potential asbestos in the basement pipes. On January 1, 2010, CFF advised MB Town Center that it intended to limit access to the Leased Premises, that it was suspending its business operations, and that it believed that additional signage should be posted in other areas of the Leased Premises.

On January 2, 2010, counsel for MB Town Center responded to CFF's correspondence, indicating that it did not wish for CFF to vacate the Leased Premises due to the asbestos problem and that MB Town Center's goal was to "undertake any necessary remediation as soon as possible." On January 3, 2010, CFF sent MB Town Center an email indicating its intention to place additional signs in the front windows of the Leased Premises the following day. MB Town Center responded that day stating that no further signage was required, that additional signage was not recommended, and that any additional signs should not reference MB Town Center or any of its agents or representatives.

On January 4, 2010, CFF placed enlarged signs in all of the front windows of the Leased Premises. These signs indicated that pipes in the basement were wrapped in materials that were presumed to contain asbestos, there was a cancer and lung disease hazard, and directed people to contact certain persons associated with MB Town Center with regard to questions or concerns.

That day, MB Town Center sent an email to CFF notifying it that its placement of the signs in the windows was in breach of the Lease and requesting that CFF immediately remove the signs. MB Town Center also notified CFF that its contractors and St. Louis County environmental officials needed access to the Leased Premises to further evaluate and address a leaky pipe and the potential asbestos issue. CFF responded that it would not allow access to the Leased Premises.

The following morning, MB Town Center sent CFF an email indicating that access was required under the Lease and was necessary to remedy the situation. CFF responded that it intended to place "No Trespassing" signs at the Leased Premises, and would forbid access to the Leased Premises. MB Town Center again noted the Lease provision allowing it access to the Leased Premises, and reaffirmed that it would be there at 10:00 a.m. on January 5, 2010.

On January 5, 2010, CFF sent a letter to the Police Chief for the City of Clayton indicating that it was posting "No Trespassing" signs and stating that it believed persons may attempt to enter the Leased Premises for "non-emergency purposes." When MB Town Center arrived at the Leased Premises on January 5, 2010, no

one from CFF was present to grant them access to the property.

On January 6, 2010, MB Town Center filed suit against CFF seeking a Temporary Restraining Order (TRO) granting MB Town Center access to the Leased Premises, requiring CFF to immediately remove any and all signs from the Leased Premises, and monetary damages as a result of CFF's breach of the month-to-month tenancy, or in the alternative, its breach of the Lease.

On January 11, 2010, following a hearing at which CFF was represented by counsel, the court entered a TRO granting MB Town Center access to the Leased Premises to undertake any necessary remediation and ordering CFF to immediately remove the signs from the Leased Premises. The court also prohibited CFF from directly or indirectly posting any additional signs or materials anywhere in the Leased Premises until further order by the court. On February 10, 2010, upon MB Town Center's motion for contempt, CFF admitted to violating the TRO by placing signs in the window of the Leased Premises and the court granted the motion for contempt with relief to be determined at trial. The court also extended the TRO, with some modifications, through March 19, 2010 by the parties' consent.

On November 19, 2010, MB Town Center moved for summary judgment on its claims for breach of month-to-month tenancy and breach of the Lease. On November 30, 2010, MB Town Center moved for entry of sanctions against CFF in accordance with the court's February 10, 2010 contempt order. CFF did not file responses or opposition to either motion.

On November 29, 2010, CFF filed a "Notice of Asbestos Contamination" (Notice) with the St. Louis County Recorder of Deeds with regard to the Leased Premises. The Notice asserted that the St. Louis County Health Department Air Quality Control determined that the property contained regulated asbestos-containing material; that MB Town Center failed to comply with federal recordkeeping requirements; that CFF, at the suggestion of the law firm Husch Blackwell Sanders LLP, was complying with its federal mandated responsibility by filing the notice; that CFF suspended its operations and left in place contaminated food and food processing equipment at the recommendation of the St. Louis County Health Department Air Quality Control; and that any comments or concerns should be directed to MB Town Center.

On December 2, 2010, counsel for CFF moved to withdraw as attorney of record for CFF. The court granted counsel's motion on December 7, 2010, noting that CFF's client representative was informed that the case remained set for trial on February 7, 2011. At the conclusion of the hearing, Larry Lampert hand-delivered a copy of the Notice to counsel for MB Town Center.

On December 8, 2010, MB Town Center filed a Verified Motion for Temporary Restraining Order and Injunctive Relief relating to CFF's Notice of Asbestos Contamination. MB Town Center alleged that the Notice contained numerous factual inaccuracies, was a slander on the title of the property, and was a blatant attempt to cloud title to gain leverage in the ongoing litigation. MB Town Center alleged that CFF had revealed its intention of placing advertising containing the Notice in various news publications, and that if CFF were to do so it would cause immediate and irreparable harm to MB Town Center. MB Town Center alleged that it is suffering, and will continue to suffer, immediate and irreparable harm because the Notice was filed and, for the sole purpose of harassing MB Town Center, CFF was

threatening to further publicize it. MB Town Center also alleged it had no adequate remedy at law because money damages were insufficient to compensate it for the ongoing harm and CFF has no assets to satisfy any monetary award against it. MB Town Center further alleged that it was likely to succeed on the merits of its claim.

On December 9, 2010, the trial court held a hearing on the motion, at which counsel for MB Town Center appeared. No one appeared on behalf of Appellants, although counsel for MB Town Center indicated that Larry Lampert was hand-delivered notice of the hearing. At the hearing, MB Town Center's counsel stated that he filed the motion following a meeting with the Lamperts the previous day at which the Lamperts demanded $500,000 in exchange for cessation of their efforts to bring the matter to the media and "to attempt to cloud and slander the title of the property[.]" Counsel stated that the Notice contained numerous inaccurate statements, including its assertion that his law firm, Husch Blackwell Sanders LLP, advised CFF. Counsel also indicated that CFF had made contact with two separate media outlets with respect to the Leased Premises.

The court found that CFF had filed the Notice of Asbestos Contamination, made actual contact with local media, and threatened to make additional contacts concerning the subject matter of the litigation. The court found CFF's conduct was improper and baseless and that MB Town Center was entitled to immediate injunctive relief because it had demonstrated a substantial likelihood of success on the merits, had no adequate remedy at law, and was suffering irreparable harm as set forth in the verified motion. The court granted the motion for TRO and set the hearing on the preliminary injunction for December 14, 2010. The December 9 TRO ordered that:

A. CFF, Larry Lampert, Angela Lampert and any other person or entity affiliated in any way with CFF ... immediately revoke, rescind, or take any other necessary action to remove the Notice from the publicly available records at the St. Louis County Recorder of Deeds office; and

B. ... CFF, Larry Lampert, Angela Lampert and any other person or entity affiliated in any way with CFF is prohibited from filing, publicizing or disseminating any document, information or material which in any way makes any reference to the building at issue, [MB Town Center], Montgomery Management, Montgomery Bank, Joel Montgomery, Patrick Miller or any other person or entity affiliated in any way with any of these persons or entities.

CFF was served with a copy of the TRO and notice of the December 14, 2010 hearing.

At the hearing on the preliminary injunction, the Lamperts appeared but the court advised them, and Larry Lampert agreed, that they could not represent CFF as the corporation must be represented by an attorney. The court then inquired who the TRO was against and counsel for MB Town Center indicated that while the TRO referenced the Lamperts, CFF was the defendant and the TRO was directed to individual persons only in their representative capacity. The court agreed that the TRO, as entered, was effective as to the corporation and its officers but that it was not effective as to the Lamperts personally. The court then clarified for Larry Lampert that if the preliminary injunction is entered and the Lamperts' subsequent

conduct is alleged to have violated the injunction, the issue of whether the Lamperts were acting on behalf of the corporation or themselves is an issue that would be decided at that time.

During argument on the preliminary injunction, MB Town Center asserted that since entry of the TRO, Larry Lampert contacted additional media regarding the case. MB Town Center argued Larry Lampert was disseminating false information and was in violation of the TRO. During argument MB Town Center provided the court with copies of CFF's correspondence and contacts with the media outlets. The trial court found that CFF had made actual contact with local media, had threatened to make additional contacts with local media regarding the subject matter of the litigation, and that CFF's conduct was improper and baseless. The court found that MB Town Center was entitled to injunctive relief because it has demonstrated a substantial likelihood of success on the merits, had no adequate remedy at law and was suffering irreparable harm. The court entered a Judgment and Preliminary Injunction against CFF and its agents acting on its behalf until February 7, 2011 using substantially the same language as was in the December 9 TRO.

On January 14, 2011, the court entered a Judgment of Contempt in favor of MB Town Center in the amount of $10,000 for CFF's willful and contemptuous violations of the court's January 11, 2010 TRO. The court also granted MB Town Center's unopposed Motion for Summary Judgment, awarding MB Town Center approximately $127,797 for unpaid rent and attorney's fees and costs.

On February 7, 2011, the date set for trial, the court canceled the trial and entered the Permanent Injunction, again using substantially the same language as the December 9 TRO. The court also entered an order directing the St. Louis County Recorder of Deeds to immediately remove the Notice of Asbestos Contamination, finding the notice was baseless, contained inaccurate statements, and was improperly filed. The court also entered a Final Judgment against CFF and in favor of MB Town Center, finding that MB Town Center was entitled to judgment for the unpaid lease charges, attorney's fees and costs, and for the judgment of contempt in the amount of $137, 797. This appeal follows.

*Point Relied On*

On appeal, Appellants contend that the trial court erred in granting a permanent injunction that prohibits CFF, the Lamperts, or any person or entity affiliated in any way with CFF from filing, publicizing, or disseminating any document, information, or material that in any way makes any reference to the building, MB Town Center, and others affiliated with MB Town Center because (I) Respondent failed to demonstrate irreparable harm, defamation, or slander of title, and thus was not entitled to an injunction; (II) the injunction violates the First Amendment of the United States Constitution and Article 1, Section 8 of the Missouri Constitution because it is an impermissible content and speaker-based prior restraint on speech that neither supports a compelling government interest nor is narrowly tailored to any government interest and is vague; (III) the Lamperts were deprived of due process when their future speech was enjoined without their being parties to the case or having the opportunity to be heard; and (IV) the injunction is contrary to Missouri law and public policy in that it arose out of an impermissible strategic

lawsuit against public participation.[1]

## Discussion

### A. Waiver and Plain Error Review

■ Appellants' sub-points I, II, and IV are being raised for the first time on appeal. "Generally, a party on appeal 'must stand or fall' by the theory on which he tried and submitted his case in the court below." *State v. Fassero*, 256 S.W.3d 109, 117 (Mo. banc 2008). Issues that are not raised in the trial court are waived. *Id.*

■ As such, these unpreserved points are subject to, at most, plain error review. Rule 84.13(c)[2]; *Carroll v. Kelsey*, 234 S.W.3d 559, 565 (Mo.App. W.D.2007). "The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review." *State v. White*, 247 S.W.3d 557, 561 (Mo. App. E.D.2007). Plain error review is rarely granted in civil cases. *Carroll*, 234 S.W.3d at 565. Under Rule 84.13, this Court, *in its discretion, may* consider plain errors affecting substantial rights when the Court finds that manifest injustice or a miscarriage of justice has resulted. Rule 84.13; *Lyon Fin. Serv., Inc. v. Harris Cab Co., Inc.*, 303 S.W.3d 589, 590 (Mo.App. E.D.2010).

■ "In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether there facially appears substantial grounds for believing that the trial court committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice." *Cohen v. Express Fin. Serv., Inc.*, 145 S.W.3d 857, 864 (Mo.App. W.D.2004).

■ In their brief, Appellants did not request plain error review despite failing to raise or preserve these points in the trial court. In their reply brief, Appellants requested plain error review of only its constitutional challenge, presenting this court with the conclusory statement that "the infringement of their constitutional rights by the injunction in this case is a manifest injustice[.]" Although Appellants acknowledge that it is not this Court's function to advocate for any party to an appeal, Appellants provide this Court with no plain error review analysis. *Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 123–24 (Mo.App. W.D.2001)(court cannot act as an advocate for a party and points unsupported by argument are deemed abandoned). Pursuant to Rule 84.13(a), "allegations of error ... not properly briefed shall not be considered in any civil appeal[.]" In spite of such deficiencies, this Court may review an unpreserved point to determine if plain error occurred; however, such review is solely within the Court's discretion. *DeCota v. J.E.M. Dev. Corp.*, 908 S.W.2d 884, 887–88 (Mo.App. S.D.1995); *Carroll*, 234 S.W.3d at 565. We will briefly address each of Appellants' sub-points individually.

### Appellants' Sub–Point I–Whether Respondent Was Entitled to an Injunction

■ As noted, Appellants failed to present any challenge to the injunctive relief

---

1. Appellants' brief fails to comply with Missouri Supreme Court Rule 84.04 in that their single point on appeal contains multiple complaints and legal issues. *In re Marriage of Fritz*, 243 S.W.3d 484, 486–87 (Mo.App. E.D. 2007). A party's failure to substantially comply with Rule 84.04 preserves nothing for review and is grounds for dismissing an appeal. *Lueker v. Mo. W. State Univ.*, 241 S.W.3d 865, 867 (Mo.App. W.D.2008). However, we prefer to dispose of a case on its merits rather than to dismiss for deficiencies in the brief. *Id.* Although Appellants' brief contains some deficiencies, it is not so deficient that it demands dismissal. See *id.*

2. All rule references are to Mo. R. Civ. P.2011, unless otherwise indicated

granted in the trial court, thus waiving the issue. Appellants did not request this Court to engage in plain error review of this point, and the decision to do so is solely within this Court's discretion.

Our review of the record demonstrates that MB Town Center provided extensive support for its request for injunctive relief, almost all of which was uncontested by Appellants. In addition to MB Town Center's uncontested statement of facts supporting its motion for summary judgment, MB Town Center alleged all of the elements necessary to obtain injunctive relief and provided the court with additional arguments and supporting exhibits on more than one occasion.

Specifically, MB Town Center alleged that the Notice contained numerous factual inaccuracies, was a slander on its title, and was a blatant attempt to cloud title to gain leverage in the ongoing litigation. MB Town Center alleged that it was entitled to injunctive relief because it was likely to succeed on the merits of its claim; had no adequate remedy at law because CFF had no assets to satisfy a monetary award against it and money damages were insufficient to compensate for the ongoing harm; and it is and will continue to suffer irreparable harm from the false statements being publicized by CFF.

At the hearings, MB Town Center's counsel reasserted that the Notice contained numerous inaccurate statements, including its assertion that his law firm, Husch Blackwell Sanders LLP, advised CFF on any matter. Counsel also indicated that CFF had made contacts with media outlets with respect to the Leased Premises, including making contact after entry of the TRO forbidding such contact. During argument MB Town Center provided the court with copies of CFF's correspondence and contacts with the media outlets.

Based on the foregoing, we find that the trial court committed no evident, obvious, or clear error in granting MB Town Center a permanent injunction.

*Appellants' Sub–Point II–Whether the Injunction Violates the U.S. and Missouri Constitutions*

 There are stringent procedural requirements regarding the raising and preservation of constitutional issues. *Beery v. Beery,* 840 S.W.2d 244, 246 (Mo. App. E.D.1992). For a constitutional issue to be preserved it must be raised at the first available opportunity. *Id.* If not raised at the first opportunity in the trial court, the constitutional claim is waived and cannot be raised on appeal. *Fassero,* 256 S.W.3d at 117.

 We will examine only CFF's constitutional claim in this portion of the opinion, as the Lamperts' alleged constitutional issues are addressed by sub-point III. In their reply brief, Appellants contend this case falls within the rare exception of cases allowing the claim to be raised for the first time on appeal because CFF was unrepresented by counsel when the injunctive relief was first sought and the court refused to allow the Lamperts to argue or present evidence at the December 14, 2010 hearing on the preliminary injunction. Appellants contends the trial court "denied them the opportunity to be heard" and that their failure to "persist in that effort surely cannot amount to a waiver of a patent constitutional issue[.]" Appellants' assertion is without merit. It is well recognized that a corporation may not legally represent itself and must act solely through a licensed attorney. *Strong v. Gilster Mary Lee Corp.,* 23 S.W.3d 234, 239 (Mo.App. E.D.2000). The trial court explained as much to the Lamperts at the December 14 hearing, at which time Larry

Lampert stated that he was aware that CFF needed to be represented by an attorney. Nothing in the record indicates that CFF acquired legal representation after its attorney withdrew on December 7, 2010. Acquiring legal representation was solely CFF's responsibility, which it failed to do. It cannot be said that the trial court denied CFF an opportunity to be heard; instead, CFF failed to take the necessary steps to be heard.

On December 9, 2010, the trial court entered the TRO containing substantially the same language and restrictions present in the Permanent Injunction challenged on appeal. At no point between the entry of the TRO and the entry of the Permanent Injunction on February 7, 2011 did CFF raise any constitutional challenge to the injunction despite having the opportunity.

CFF has waived its constitutional challenge and cannot bring it on appeal because it failed to raise the issue at the first available opportunity. *Fassero*, 256 S.W.3d at 117. Furthermore, in light of Appellants' failure to provide this Court with any analysis of plain error review to the constitutional issues, this Court declines to exercise our discretion to review the point for plain error.

### Appellants' Sub–Point IV–Whether the Injunction is Contrary to Missouri Law and Public Policy

█ On appeal, Appellants argue the injunction is contrary to Missouri law and public policy in that it arose out of an impermissible strategic lawsuit against public participation. Appellants contend that MB Town Center's pursuit of the permanent injunction was the strategic use of litigation aimed at preventing the Lamperts from speaking truthfully about matters of public interest because such statements were against MB Town Center's interest.

Again, Appellants failed to raise this issue before the trial court, resulting in its waiver. Due to Appellants' failure to even request, let alone analyze, plain error review on their public policy challenge under sub-point IV, this Court declines to exercise its discretion to review this sub-point for plain error.

### B. Appellants' Sub–Point III–Whether the Injunction Applies to Larry and Angela Lampert as Individuals or in Their Representative Capacity

█ On appeal, the Lamperts contend they were deprived of their right to procedural due process by the trial court's entry of the Permanent Injunction against them as individuals without providing them with notice and an opportunity to be heard.

The February 7, 2011, Permanent Injunction provides that:

B. CFF, Larry Lampert, Angela Lampert and any other person or entity affiliated in any way with CFF is prohibited from filing, publicizing or disseminating any document, information or material which in any way makes any reference to the building at issue, [MB Town Center], Montgomery Management, Montgomery Bank, Joel Montgomery, Patrick Miller or any other person or entity affiliated in any way with any of these persons or entities.

MB Town Center brought suit against only CFF and the Lamperts were not parties in the underlying action. Notably, the language of the Preliminary Injunction more clearly established that the Lamperts were enjoined only in their representative capacity providing that "... CFF, and any agent, servant, employee or other person acting in concert or on behalf of CFF, including but not limited to Larry Lampert and Angela Lampert ..." were enjoined.

Due to ambiguity in the trial court's order, we remand to the trial court for

clarification of subsection B of the Permanent Injunction as to whether the Lamperts are enjoined individually or only in their capacity as representatives of CFF. Appellants' point on appeal is denied and the trial court's judgment is affirmed in all other respects.

## Conclusion

The judgment of the trial court is affirmed and the cause is remanded to the trial court with directions.

PATRICIA L. COHEN, P.J., and ROBERT M. CLAYTON, III, J., concur.