**STATE of Missouri, Respondent,**

**v.**

**Brian B. FASSERO, Appellant.**

No. ED 92632.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 9, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 14, 2010.

Craig A. Johnston, Columbia, MO, for appellant.

Chris Koster, Atty. Gen., Karen L. Kramer, Jefferson City, MO, for respondent.

GARY M. GAERTNER, JR., Judge.

### Introduction

Brain B. Fassero (Defendant) appeals from the judgment of the trial court entered upon a retrial by jury of the penalty phase and sentencing portion of his trial in which a jury found him guilty of one count of child molestation in the first degree, in violation of Section 566.067 RSMo 2000. We affirm.

### Factual and Procedural Background

Defendant was convicted in 2005, after a jury retrial, of first-degree child molestation and sentenced to a 15–year prison term. *State v. Fassero*, 256 S.W.3d 109, 114 (Mo. banc 2008). During the penalty phase of Defendant's jury retrial, the trial court admitted, over Defendant's objection, an indictment from Madison County, Illinois, charging Defendant with two felony counts of aggravated criminal sexual abuse. *Id.* On transfer from this Court, the Missouri Supreme Court determined that the trial court erred in the penalty phase of Defendant's retrial by admitting evidence of the Illinois indictment because the State had not proven by a preponderance of the evidence that Defendant had committed the underlying acts of sexual abuse. *Id.* at 118–19. In so concluding, the Supreme Court found that the State had presented only the indictment itself, and had failed to present evidence that

Defendant had committed the acts of sexual abuse charged in the Illinois indictment. *Id.* at 119. The judgment as to the Defendant's sentence was reversed and the case remanded for a new penalty phase and sentencing. *Id.* at 119. In all other respects, the judgment was affirmed. *Id.*

The Missouri Supreme Court issued its decision on June 30, 2008, and the cause was reopened from mandate on July 10, 2008. Appointed counsel entered his appearance on August 20, 2008, and filed a motion for discovery on Defendant's behalf. On August 22, private counsel, who had represented Defendant at his previous trial, entered his appearance for Defendant and Defendant's appointed counsel was allowed to withdraw.

On September 5, 2008, Defendant's counsel signed a memorandum that scheduled Defendant's jury trial for November 17, 2008. The State filed motions to endorse additional witnesses on October 29 and November 5. The witnesses listed on the October 29 motion included the alleged victim (B.M.) in the Illinois indictment and her mother (T.W.). The cause was called on November 6 to hear the State's October 29 motion, which was granted; Defendant's counsel did not appear at this hearing as the notice of hearing was sent to Defendant's prior counsel. The State filed another motion to endorse additional witnesses, including James Caulk and William Caulk, on November 12. The certificate of service on this motion indicates it was sent to Defendant's trial counsel on November 10.

The penalty phase of Defendant's trial was retried to a jury from November 17 through November 19, 2008. On the first morning of trial, Defendant orally moved for a continuance of the jury trial, claiming that he had not been provided discovery in a timely manner. During pre-trial argument, the trial court examined a letter contained in the court file indicating that discovery had been provided to Defendant's previous counsel on February 19, 2004. In particular, the letter indicated that a St. Peters police report, an Edwardsville police report, a Madison County Child Advocacy Center interview of B.M., a Child Abuse/Neglect Report concerning Defendant's daughter; and a deposition of an individual named Laurie Lake had been sent to Defendant's prior counsel on that date. The State also indicated that it had resent copies of this discovery to Defendant's current counsel two weeks prior to the November 17 retrial. Defendant conceded that these documents would "cure" the issue, and acknowledged that he had received discovery pertaining to the Illinois indictment. The trial court denied Defendant's motion for a continuance.

Following an instruction conference on November 17, Defendant filed a written motion for continuance, claiming that he had not been allowed sufficient time to consult with his counsel and to prepare his case. In this written motion, Defendant claimed that he believed the State failed to comply with the Missouri Supreme Court's remand order in an attempt to prevent him from being able to meet personally with his counsel to prepare his defense. Defendant acknowledged that his motion for continuance had already been denied, but indicated that he was presenting his previous motion in the form of a written personal statement.

On the second day of trial, the parties presented argument concerning the State's motion to endorse James Caulk and William Caulk as additional witnesses. The State pointed out that these two individuals had been mentioned in great detail in the police reports Defendant had received considerably in advance of the trial. In response, Defendant objected on the basis that he had not had an opportunity to

engage in discovery in respect to these two witnesses. The State offered to make the witnesses available for an interview with Defendant's counsel, who responded, "That's fine, Judge. We would take that opportunity."

As relevant to the issue on appeal, the State presented the following testimony of the victim (A.A.), B.M., T.W., and two of Defendant's uncles, William Caulk and James Caulk.

A.A. testified that Defendant inserted his finger into her vagina twice while A.A. was playing in a ball pit at a local indoor play area. A.A. was ten years old at the time, and Defendant was a stranger to her.

B.M. testified that Defendant's mother was a friend of her mother's co-worker. When B.M. was nine years old, Defendant touched her in ways that made her feel uncomfortable. These incidents occurred over the course of approximately one year. On one occasion, Defendant took B.M. and his young daughter to a water park and had B.M. change her clothes in front of him. Defendant also changed his clothes in front of B.M. When Defendant took her home that day, B.M. was afraid because she knew her mother was not going to be home and she did not know what was going to happen. Defendant and B.M. were alone because Defendant had dropped his daughter off at her mother's home. Defendant entered B.M.'s bedroom after they got to B.M.'s house, which made B.M. uncomfortable because she was about to take a shower and was wearing only a towel. When B.M.'s mother came home and found Defendant and B.M. in B.M.'s room, she talked to B.M. about the incident.

B.M. testified that after this incident, her mother did not allow her to go on outings with Defendant. However, Defendant would come by the hair salon where B.M.'s mother worked and where B.M. would stay after school. On occasions when B.M.'s mother was busy with a client, Defendant would ask B.M. to leave the salon with him. B.M. would go with Defendant to his car, where on at least two occasions, he touched her breasts beneath her shirt. Once, Defendant had B.M. unbutton her pants and he touched her vagina under her underwear with his hand. Defendant told B.M. not to tell anyone what happened. On one occasion, Defendant lured B.M. out to his car by offering to show her his palm pilot. Defendant showed her a game on his palm pilot that featured partially naked women.

When B.M.'s mother heard about Defendant's arrest in this case, she asked B.M. if Defendant had ever touched her or made her feel awkward around him. At first, B.M. told her mother that nothing had ever happened. B.M. later approached her mother and told her what had occurred. B.M.'s mother went to the police with her suspicions about Defendant. B.M. was then interviewed by an officer with the Edwardsville Police Department and later taken to a child abuse assessment center, where she spoke with counselors and made a statement concerning the incidents with Defendant.

T.W. testified that she was B.M.'s mother. T.W. knew Defendant because Defendant's mother was a close friend of the woman with whom T.W. owned a hair salon. Defendant's daughter adored B.M., who was four– or five-years-older. After Defendant approached T.W. and indicated that he wanted to take the two girls to Six Flags or a water park, T.W. allowed B.M. go to Six Flags with Defendant. T.W. and her husband went to the movies that day, but came home earlier than expected. When T.W. got home, she saw Defendant's car parked outside her residence. When T.M. entered B.M.'s bedroom, she saw Defendant sitting on her daughter's bed.

B.M. was in the bedroom, wearing only a towel. T.W. removed B.M. from the bedroom and told her it was time to take a bath. While they were in the bathroom, T.W. questioned B.M. about Defendant's presence in B.M.'s bedroom and asked B.M. if anything had happened. B.M. would not "say a whole lot." The only thing B.M. did tell T.W. was that Defendant told B.M. that she had pretty legs. After this incident, T.W. would not allow B.M. to go on outings with Defendant and his daughter.

B.M. spent the afternoons after school at the hair salon. Defendant often came by the hair salon because his mother was there every day. Defendant made such a point of talking to B.M. at the salon that other people noticed and remarked on his behavior. T.W. told B.M. that she was not allowed to go anywhere with Defendant. T.W. did not feel as if she could tell Defendant that he could not come to the salon because it would jeopardize the relationship she and her co-owner had with Defendant's mother and because T.W. "really had no proof of anything." T.W. later learned that B.M. had been sneaking out of the salon with Defendant, and she found B.M. in Defendant's car on one occasion, when she went to look for B.M. after noticing B.M. had left the salon.

After T.W. became aware that Defendant was arrested in this case, she went to the social worker at B.M.'s school "because the—everything that I had feared and kept inside, I knew that this was—probably really had happened, and it was time to deal with the situation." During a meeting with this social worker, T.W. asked B.M. if anything had occurred with Defendant. Initially, B.M. denied anything had happened. T.W. went to the police and reported the incidents involving Defendant and B.M. T.W. made a statement, which was summarized in a police report.

T.W. often observed Defendant with Defendant's daughter. Defendant's interaction with his daughter made T.W. uneasy. Once, Defendant had his daughter stick her tongue in his mouth and he would "play bite" her tongue as if it were a game.

William Caulk testified that he was Defendant's uncle and that Defendant's mother was his little sister. After Defendant was arrested in connection with the charges involving A.A., Defendant's mother asked William to help her clean his room. During the process of cleaning out Defendant's room, William discovered pictures of young girls that struck him as "odd"; one photo was taken under water and featured two young girls in bathing suits from their midriff down, and another showed a young girl bending over a water fountain. William also found the following pornographic magazines, which he turned over to the St. Peters police: "Finally Legal: the Best in Naughty Young Sex"; "Oral Virgin: I'm Ready to Put It In My Mouth"; "Cotton Panty Party: Naughty Teen Takes It Off"; and "Barely Legal: Mama Says No Boys, Good Thing You're a Man."

William further testified that witnessing Defendant's interaction with Defendant's daughter made him uncomfortable. In particular, William testified that when Defendant's daughter was between three– and four-years-old, he saw Defendant's daughter sitting on Defendant's lap. William felt uncomfortable because he thought the way Defendant was holding and kissing his daughter was "not right" and "odd."

William had concerns about Defendant before the charges were brought against him, based on what people had told him over the years. William never allowed his daughter to be around Defendant.

James Caulk testified that he was also Defendant's uncle. He helped William clean Defendant's room after Defendant was arrested. James saw the magazines that William turned over to the police. Although James had at one time allowed his daughter to be around Defendant unattended, James had stopped allowing her to be alone with Defendant, based on something his daughter told him had happened.

James observed Defendant interacting with Defendant's daughter in ways that made James uncomfortable. James thought that their interaction was "overly affectionate" for a father and daughter.

In his Motion for New Trial Following Retrial by Jury of Bifurcated Phase Two Sentencing (Motion for New Trial), Defendant claimed, as relevant to the issue on appeal, that the trial court erred when it denied his motion for continuance because he was denied an opportunity to prepare with his counsel when the Department of Corrections did not deliver him to the St. Charles County Department of Corrections until the Friday before his Monday trial. Defendant did not raise any allegations concerning discovery issues or late endorsement of witnesses in his Motion for New Trial.

### Point on Appeal

In his sole point, Defendant claims the trial court abused its discretion in overruling his motion for a continuance in violation of Defendant's rights to due process, a fair trial, and effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution.

### Standard of Review

The decision to grant a continuance is within the sound discretion of the trial court, and we will not reverse a trial court's decision absent a strong showing of abuse. *State v. McVay*, 852 S.W.2d 408, 412 (Mo.App. E.D.1993). The party requesting the continuance bears the burden of establishing both abuse and any prejudice resulting from a denial of the request. *Id.*

### Discussion

In his single point on appeal, Defendant claims the trial court abused its discretion in overruling his motion for a continuance in violation of Defendant's rights to due process, a fair trial, and effective assistance of counsel because: 1) the cause had been set for trial only two months earlier; 2) the State filed a motion to endorse witnesses concerning crimes committed in Illinois less than three weeks prior to the trial and Defendant's counsel did not receive notice of the motion; 3) although Defendant's prior counsel received discovery concerning the Illinois charges in 2004, Defendant's counsel at the retrial received this discovery less than two weeks before the trial; 4) the State filed a motion to endorse witnesses who provided bad character testimony less than one week prior to trial; and 5) Defendant and his counsel's ability to prepare for trial was hampered by the Department of Correction's failure to transport Defendant to St. Charles County until the Friday before the trial.[1]

In his brief, Defendant claims that his counsel did not have adequate time to prepare for Defendant's defense due to the State's filing of a motion to endorse B.M. and T.W. fewer than three weeks prior to trial, and its filing of a motion to endorse James Caulk and William Caulk less than a week before trial.

---

1. Defendant's trial commenced on Monday, November 17, 2008.

Under Rule 23.01(e), trial courts have discretion to permit the late endorsement of witnesses. *State v. Hibler*, 21 S.W.3d 87, 92 (Mo.App. W.D.2000); Rule 23.01(e).[2] In determining whether a trial court abused its discretion in permitting a late endorsement, we consider whether: (1) the defendant waived the objection; (2) the State intended to surprise the defendant, or acted deceptively or in bad faith with the intention of causing disadvantage; (3) the defendant was, in fact, surprised and suffered disadvantage; and (4) the type of testimony presented might have been readily contemplated by the defendant. *Id.* at 93.

Defendant failed to preserve his claim that the trial court erred in denying him a continuance on the basis of late endorsement of witnesses or the untimely provision of discovery regarding evidence of Defendant's Illinois charges because he did not raise this issue in his Motion for New Trial. Thus, to the extent that Defendant's point on appeal is based on this argument, we may review for plain error only. *State v. Winfield*, 5 S.W.3d 505, 511 (Mo. banc 1999): Rule 29.11(d); Rule 30.20. "[P]lain errors, affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20.

Considering that B.M. was the alleged victim in the Illinois indictment, the admission of which resulted in this case being remanded in 2008 for a new penalty phase and sentencing, we find Defendant's complaint of inadequate time to prepare for B.M.'s and T.W.'s testimony unpersuasive.[3] Moreover, a letter contained in the court file indicated that discovery, which included copies of the Edwardsville police report, the child advocacy center interview, and a child abuse report, had been provided to Defendant on February 19, 2004. This same information was again provided to Defendant on November 3, 2008. Any argument that Defendant was, in fact, surprised and disadvantaged by any late endorsement of B.M. or T.W. is disingenuous; the Supreme Court reversed Defendant's original sentence after finding that the State failed to present evidence showing Defendant committed the underlying acts of sexual abuse charged in the Illinois indictment concerning B.M. Consequently, the type of testimony presented by these two witnesses most assuredly should have been readily contemplated by Defendant. The record does not reflect that the State intended to surprise Defendant or acted deceptively or in bad faith with the intention of causing disadvantage to Defendant.

As to any late endorsement of James Caulk or William Caulk, Defendant waived his objection when the State offered to make these witnesses available for an interview. Defendant assured the court that this arrangement would be fine and that he would take advantage of the opportunity. "Having received all relief requested, defendant will not now be heard to say he should have been given additional relief." *State v. Morris*, 662 S.W.2d 884, 891 (Mo.App. S.D.1983).

Moreover, as these two individuals were discussed in great detail in the police reports that Defendant received "a long time" prior to the trial, the testimony presented by these witnesses should have

---

**2.** All rule citations are to Mo. R.Crim. P.2009, unless otherwise indicated.

**3.** As noted previously, Defendant's counsel in this proceeding was his trial counsel at the

prior trial where the State presented the Illinois indictment during the penalty phase of the trial.

been anticipated by Defendant. Defendant has failed to indicate how additional time to investigate would have aided him at trial with respect to the Caulks' testimony. We conclude any late disclosure of B.M., T.W., James Caulk, or William Caulk as witnesses did not result in fundamental unfairness or prejudice to substantial rights of Defendant. *Id.* Nor has manifest injustice or miscarriage of justice resulted from the trial court's permitting the endorsement of these witnesses and subsequently denying Defendant's motion for continuance on this basis. Rule 30.20.

■ We now consider Defendant's contention that the trial court abused its discretion in overruling his motion for a continuance because his ability to prepare for trial was hampered by the Department of Correction's failure to transport Defendant to St. Charles County until the Friday before his trial commenced on Monday.

■ A very strong showing is required to demonstrate a trial court abused its discretion in denying a motion for continuance. *State v. Menteer*, 845 S.W.2d 581, 584 (Mo.App. E.D.1992). The party requesting the continuance bears the burden of proving prejudice. *Id.*

Here, Defendant argues that because he was incarcerated in Cameron, Missouri, and not transported to St. Charles County until three days prior to his first day of trial, he did not have an opportunity to talk with his counsel until the night before his trial and was thus not ready to proceed. The record does not indicate why Defendant was unable to meet with his counsel on Friday or Saturday. Moreover, no motion for meaningful access was ever filed with the court. Furthermore, Defendant does not contend that he would have been inaccessible had his counsel sought to meet with him in Cameron, or that they could not have communicated by telephone. Importantly, Defendant has not

delineated how a continuance would have aided his defense or changed his defense in anyway, or shown how he was prejudiced by the denial. We find no abuse of discretion.

Point denied.

### Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, P.J., and GEORGE W. DRAPER III, J., concur.