

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112670 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | Cause No. 2322-CR01045-01 |
| | ) | |
| DESMOND HARRIS, | ) | Honorable Michael W. Noble |
| | ) | |
| Appellant. | ) | FILED: June 27, 2025 |

### Introduction

Desmond Harris (Harris) appeals his convictions for first-degree robbery, first-degree assault, and two counts of armed criminal action. In Point I, Harris alleges that the trial court erred and abused its discretion by denying his motion for a mistrial after Victim testified that he recognized Harris from a news report. In Point II, Harris claims that the trial court plainly erred at sentencing by considering dismissed charges and charges for which Harris was acquitted (hereinafter "prior charges") because they had not been proven by a preponderance of the evidence. While we reject Point I, we agree that the trial court plainly erred in considering at sentencing evidence of Harris's prior charges that had not been proven by a preponderance of the evidence. Therefore, we reverse and remand only for resentencing.

### Factual and Procedural Background

On June 2, 2022, Victim returned home from work and noticed his front door was open. A truck belonging to Victim's ex-girlfriend, B.T., was parked in front of his apartment. Victim got

out of his car and Harris, who Victim knew only as B.T.'s cousin, approached him. Harris began making conversation and called over to B.T., who was sitting in her truck, to ask if she had been hit with a pole. Victim denied hitting B.T., and B.T. walked over to show them a scratch on her back. While Victim was looking at the scratch, Harris pulled out a gun and pointed it at Victim's face, demanding that Victim "give up everything." Harris's accomplice whom Victim knew only as "Buck Buck" stood behind Victim with an AR-15. Victim gave up his wallet, car keys, and a bag containing a handgun.

Harris again pointed his gun at Victim's face, and Victim smacked it away. Harris shot Victim multiple times—in the groin, down his leg, and in his foot. While Victim was on the ground, Harris demanded the rest of his stuff. Victim replied "y'all already robbed and shot me, y'all might as well leave." Buck Buck shot Victim in the arm with his AR-15. Victim was able to get up and run to the side of his house as Harris and Buck Buck left in Victim's car. Victim called 911 and was taken to the hospital. Victim had been shot thirteen times, requiring five surgeries. Victim later identified Harris from a line-up.

The State charged Harris with first-degree robbery, first-degree assault, two counts of armed criminal action, second-degree burglary, and stealing. The case proceeded to jury trial on February 20, 2024. During Victim's direct examination, the prosecuting attorney attempted to ask Victim about how his identification of Harris took place. Victim testified:

> Q: Okay. Do you know – did you find out what the purpose was of why [the police] wanted to meet with you at the police station?
> A: Oh, yes, sir.
> Q: And what was that?
> A: To identify Mr. Harris
> Q: Okay. And do you remember how that was done?

2

A: Yeah. I – I seen a news report about him, about another situation he was in, and that's how I found out – because I didn't know his last name at first.

Q: Okay.

A: And that's how I found out his last name, and I found out another situation he apparently was in –

Defense counsel asked to approach and objected to Victim's reference to seeing Harris on the news in another situation, asked for the statement to be stricken from the record and that the jury be instructed to disregard the statement. Defense counsel also moved for a mistrial, which the trial court overruled. The trial court struck the statement from the record and instructed the jury to disregard it. At the close of State's evidence, the trial court granted Harris's motion for judgment of acquittal as to the second-degree burglary and stealing charges. The jury found Harris guilty of the remaining counts.

Sentencing occurred on April 25, 2024. At the hearing, when asked by the court, neither the State nor the defense offered any suggested edits or additions to the sentencing assessment report. The prosecuting attorney asked the court to impose 15-year sentences for the first-degree robbery and the first-degree assault, and consecutive 10-year sentences for the armed criminal action charges. The prosecuting attorney did not present any further argument. Defense counsel requested leniency due to Harris's fatherless childhood and requested the court impose 10-year sentences on the robbery and assault and a 3-year sentence for the armed criminal actions, for a total of 13 years.

The trial court then *sua sponte* inquired of the prosecuting attorney the facts of Harris's prior criminal jury trial for which he was acquitted:

[Court]: In addition, what was – has not been talked about regarding Mr. Harris – because this Court is allowed to look at all of his behavior, including his priors.

3

And if I remember correctly, [Prosecutor 1], Mr. Harris had another trial in this jurisdiction?

[Prosecutor 1]: Yes, he did, Your Honor.

[Court]: Can you share with me what that trial was?

[Prosecutor 1]: That trial was tried by [Prosecutor 2], who's with me today, and – if you want to provide the Court with the facts of that case.

[Prosecutor 2]: Yeah, to start with, that was a not guilty verdict.

[Court]: The Court is aware. But the Supreme Court has said the Court can take into consideration any of those cases.

[Prosecutor 2]: Yeah. The facts as alleged in that case were that the defendant, with two others, attempted to steal a vehicle, and, in the course thereof, a child was shot in the head.

[Court]: And, so, it's my understanding that a jury of his peers found him not guilty; is that correct?

[Prosecutor 2]: That is correct. Before that was given to the jury, the attempted vehicle carjacking and the robbery were *nolled* by the State.

[Court]: All right. So, in terms of this isn't Mr. Harris' one and only dance with the criminal justice system, while he may have prevailed in the other system, it is – the fact that he has had two serious incidents with the criminal justice system takes in the fact that this was not just a one-off. So this isn't just a had a bad day, made some bad decisions. This shows the Court that this is a series of bad decisions; one in which he prevailed on, and second which he did not prevail on. That being said, the Court – and seeing how there's no legal cause or reason why sentence and judgment should not be pronounced, in keeping with the verdict of the jury finding the defendant guilty of rob[bery] first, armed criminal action, assault first, and armed criminal action, beyond a reasonable doubt, the defendant will be committed to the custody of the Missouri Department of Corrections for a term of fifteen years for Count I, ten years for Count II, fifteen years for Count III, and ten years for Count IV, all of them to be run consecutive with each other.

This appeal follows.

4

*Point I – Mistrial*

Harris argues in Point I that the trial court abused its discretion in overruling his motion for a mistrial after Victim testified that he recognized Harris from a news report because the testimony constituted evidence of prior bad acts. We disagree because Victim's statement was vague and did not specifically connect Harris to a crime, and because the trial court's limiting instruction was sufficient to cure any potential prejudice.

A.     Standard of Review

Mistrials are drastic remedies "that should be granted only in extraordinary circumstances." *State v. Berkey*, 701 S.W.3d 686, 690 (Mo. App. E.D. 2024) (internal quotation omitted). A trial court's denial of a request for mistrial is reviewed for a "manifest abuse of discretion." *Id.* (internal quotation omitted). A manifest abuse of discretion occurs when there is "a grievous error where prejudice otherwise cannot be removed." *Id.* (internal quotation omitted).

B.     Discussion

Generally, evidence of prior bad acts is inadmissible to show a defendant's propensity to commit crimes. *Davidson v. State*, 308 S.W.3d 311, 318 (Mo. App. E.D. 2010). Courts consider five factors in determining prejudicial effects of uninvited references to other crimes:

> 1) [w]hether the statement was, in fact, voluntary and unresponsive to the prosecutor's questioning or caused by the prosecutor; 2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution; 3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused; 4) whether the court promptly sustained defense counsel's objection to the statement, and instructed the jury to disregard the volunteered statement; and 5) whether, in view of the other evidence presented and the strength of the State's case, it appeared that the comment played a decisive role in the determination of guilt.

*State v. Goff*, 129 S.W.3d 857, 866 n.7 (Mo. banc 2004).

5

Harris acknowledges the isolated nature of the statement, the State's lack of complicity, and the trial court's prompt, curative response. Instead, Harris focuses solely on the offensiveness of the referenced conduct. However, this too does not weigh in Harris's favor.

In addressing references to other potential crimes, courts have held that "vague or speculative references to the defendant's involvement in other crimes do not constitute evidence of the defendant's direct association with a crime." *Davidson.* 308 S.W.3d at 318-19. In *Davidson*, the movant alleged ineffective assistance of counsel for failing to object to a witness' identification of movant based on a photograph in a local newspaper because such a reference was improper evidence of his prior bad acts. *Id.* at 318. The motion court denied the movant an evidentiary hearing on this claim and this Court affirmed, holding that "[i]n the absence of a specific connection to a crime, Movant's association with the [newspaper] is, if anything, merely a vague reference to criminal activity and is insufficient to connect Movant with prior bad acts." *Id.* at 319. Further, limiting instructions to the jury are sufficient to cure any potential prejudice because "[j]urors are presumed to follow the trial court's instructions." *State v. Watson*, 391 S.W.3d 18, 23 (Mo. App. E.D. 2012).

Turning to the present case, the trial court did not abuse its discretion in overruling Harris's request for a mistrial because Victim's statement was nothing more than a vague reference to something that might or might not have been criminal activity. This is nearly identical to the vague reference in *Davidson*, the sole difference being the *Davidson* witness testified he saw the defendant's photograph in the newspaper rather than on the news. 308 S.W.3d at 315. Victim's statement here was insufficient to connect Harris with any prior bad acts and none of the factors weigh in favor of granting a mistrial. Further, any potential prejudice was cured by the trial court's immediate instruction to disregard the statement. *Watson*, 391 S.W.3d at 23. Point denied.

*Point II – Sentencing*

In Point II, Harris asserts that the trial court plainly erred in considering at sentencing his prior charges. Harris argues that because no evidence of the prior charges was presented, the trial court could not have determined by a preponderance of the evidence that he committed those offenses, and that because the trial court based its decision on that consideration, manifest injustice occurred. We agree.

A.     Standard of Review

Harris acknowledges that he did not preserve this issue, but requests we review this claim under Rule 30.20,[1] which gives us the discretion to review a plain error affecting substantial rights if we find it has resulted in manifest injustice or miscarriage of justice. *State v. Hill*, 697 S.W.3d 885, 888 (Mo. App. E.D. 2024). We will not review claims of plain error "unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (internal quotation omitted). Plain error review is a two-step analysis where we first determine "whether there was 'evident, obvious, and clear' error 'affecting substantial rights'" and, if so, "whether that plain error resulted in 'manifest injustice or miscarriage of justice.'" *Hill*, 697 S.W.3d at 888 (quoting *State v. Kendrick*, 550 S.W.3d 117, 120-21 (Mo. App. W.D. 2018)).

B.     Discussion

Trial courts are "allowed to rely on a wide range of evidence at sentencing, including evidence of the history and character of the defendant." *Childs v. State*, 440 S.W.3d 580, 585 (Mo. App. E.D. 2014). Evidence that may be considered includes conduct for which a defendant has been acquitted "so long as that conduct has been proved by a preponderance of the evidence."

---

[1] All rule references are to the Missouri Supreme Court Rules (2024).

*United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam); *State v. Clark*, 197 S.W.3d 598, 602 (Mo. banc 2006) (per curiam). Generally, this burden of proof can be satisfied when the acquitted charges were part of the same case, or when the State presents evidence of the acquitted charges. *See State v. Davis*, 422 S.W.3d 458, 463-64 (Mo. App. E.D. 2014) (court considered acquitted conduct which had been part of the same underlying case); *Clark*, 197 S.W.3d at 599-600 (State introduced testimonial and forensic evidence of acquitted conduct at sentencing). Mere evidence that a defendant was charged with an offense is irrelevant to establish that he or she actually committed that offense. *See State v. Fassero*, 256 S.W.3d 109, 119 (Mo. banc 2008) (holding that an indictment was not "history and character" evidence and therefore inadmissible because it was not relevant to prove that the defendant engaged in the conduct alleged in the indictment).

Harris has established that the court's mistake was evident, obvious, and clear. The trial court was correct in that it could consider Harris's prior charges, but omitted the important qualifier – that they must be proven by a preponderance of the evidence. There was no evidence before the trial court that could have established that Harris committed the prior charges, even by a lower standard of proof. Harris's prior case was not part of the same underlying case, and was presided over by a different judge. The present case is unlike *Davis*, where the acquitted charges were part of the same case, thus heard by the same judge. 422 S.W.3d at 464. Furthermore, the State, at the direction of the trial court, merely summarized the charging language from the prior charges. If an indictment is an improper way to prove that a defendant committed conduct alleged therein, so too is a paraphrasing of its language.

Respondent argues that it was not improper for the trial court to consider the prior charges because courts routinely consider the contents of police reports and sentencing assessment reports.

8

*See Childs*, 440 S.W.3d at 585 (trial counsel was not ineffective for failing to object to the admission of police reports at sentencing because "[t]he police reports offered by the State contained the same type of information regularly considered by sentencing courts in presentence investigation reports"); *Martin v. State*, 291 S.W.3d 846, 850 (Mo. App. W.D. 2009) (with judge sentencing, "hearsay is routinely permitted in the form of pre-sentencing investigations and in other ways" (internal quotation omitted)). Respondent's reliance on these cases is misplaced because there were no police reports provided to the trial court, and the sentencing assessment report contained only vague, unsubstantial references to the prior charges. The report indicated that Harris was arrested on June 17, 2022 for vehicle hijacking, armed criminal action, unlawful use of a weapon, and attempted first-degree robbery. In reference to Harris's interview for the report, the report writer stated that Harris "deni[ed] he was ever on scene due to him being incarcerated for another offense that he stated he was recently found not guilty of." A murky reference to Harris's incarceration for an indeterminate offense is more akin to an indictment, which is insufficient to prove that an individual committed that conduct. *Fassero*, 256 S.W.3d at 119. It was error for the trial court to consider these references in sentencing.

Finding that the trial court committed evident, obvious, and clear error, we must now determine whether it resulted in manifest injustice or a miscarriage of justice. An appellant must establish that the trial court not only held a mistaken belief as to the law, but also based its sentence on that mistaken belief. *State v. Pierce*, 548 S.W.3d 900, 906 (Mo. banc 2018). "Anything short of that does not rise to the level of manifest injustice." *Id.*

We find that the trial court's error resulted in manifest injustice. First, the record demonstrates that the trial court believed that it could consider Harris's previous charges, which was mistaken because although trial courts can consider acquittals, it can do so only if the conduct

9

has been proven by a preponderance of the evidence. *See Watts*, 519 U.S. at 155-56; *Clark*, 197 S.W.3d at 602. Second, it is clear from the record that the trial court based its sentencing decision on that mistaken belief. It was the trial court that raised Harris's prior charges. The sentencing assessment report contained only vague, unsubstantial information about the prior charges,[2] and the State declined to mention the prior charges when the court asked if either party had any additions or corrections to the report. Although one of the prosecuting attorneys was involved in the previous case, the State opted not to present any evidence or argument regarding Harris's prior charges. After the prosecuting attorney emphasized that Harris was acquitted of those charges, the trial court stated that it could take the charges into consideration.

Following the prosecutor's brief summarization of the prior charges, the court launched into a monologue in which it noted that the present case was not Harris's "one and only dance with the criminal justice system," showing that this instance was not a "one-off." The trial court continued, adding that this was a "series of bad decisions; one in which he prevailed on, and second which he did not prevail on." The trial court then immediately imposed its sentence totaling 50 years. The trial court provided no other rationale upon which it based its sentencing decision. We cannot know whether the court considered anything other than what it stated on the record.

Respondent cites the general rule that when the proceeding is before a judge instead of a jury, "[w]e 'presume[] that inadmissible evidence is neither prejudicial nor fundamentally unfair because judges are presumed not to consider improper evidence during sentencing.'" *Williams v. State*, 559 S.W.3d 100, 107 (Mo. App. W.D. 2018) (second alteration in original) (quoting *State*

---

[2] "The report of the pre-sentence investigation shall contain any prior criminal record of the defendant and such information about his or her characteristics . . . and the circumstances affecting his or her behavior . . . ." Rule 29.07.

*v. Taylor*, 944 S.W.2d 925, 938 (Mo. banc 1997)). The record easily rebuts this presumption as the trial court clearly considered the improper evidence. Point II is granted.

Turning to Harris's request for a new sentencing judge upon remand, we decline to grant this request. Rule 32.09(c) allows for a change of judge when fundamental fairness so requires. A similarly situated appellant made the same request in case of remand. *State v. Hudson*, 607 S.W.3d 756, 758 (Mo. App. W.D. 2020). The appellant, relying on federal case law, argued that "the judge would reasonably be expected to have substantial difficulty in putting out of his mind previously-expressed views or findings determined to be erroneous," that a change of judge "would preserve the appearance of justice," and "would not entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Id.* (internal quotations omitted). The court did not reach the merits of the request, holding that the proper procedure under Missouri law would be to file a motion for change of judge pursuant to Rule 32.09(c) in the circuit court. *Id.* Likewise, we do not address whether this motion would be meritorious should Harris choose to file it on remand.

## Conclusion

For the reasons set forth above, we affirm Harris's convictions and remand for resentencing consistent with this opinion. We decline Harris's request to order resentencing before a new judge.

Virginia W. Lay, J.

Lisa P. Page, P.J., concurs.
Rebeca Navarro-McKelvey, J., concurs.

11